(No. 70205.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARIO FLORES, Appellant.

*Opinion filed November 19, 1992.—Rehearing denied February 1, 1993.*

Charles M. Schiedel, Deputy Defender, of Springfield, and Steven Clark, Assistant Appellate Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Mario Flores, appeals from an order of the circuit court of Cook County dismissing his petition and supplemental petition for post-conviction relief. Defendant's appeal lies directly to this court. 134 Ill. 2d R. 651(a).

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant's conviction stems from his participation in the shooting death of Gilbert Perez. At defendant's trial, the jury heard evidence that in the early morning hours of January 1, 1984, defendant and Victor Flores (Victor), while driving in defendant's sister's car, encountered Perez at the scene of an accident. Harry Gomez subsequently arrived at the scene in his car.

Nancy Lebron testified that, once at the scene, one of the men put his arms around Perez and talked to him "as if they were good friends." Meanwhile, defendant returned to his car, removed a shotgun from the trunk, and pointed it in the direction of Perez. After one of his companions shouted at him, defendant put the gun into the backseat of the car and returned to the group. Perez then walked to defendant's car and sat in the front passenger seat. Defendant sat in the backseat and Victor drove away.

Victor testified that, as he, defendant and Gomez approached Perez, Perez began to threaten them. Defendant retrieved a shotgun from his car but, at Gomez's di-

rection, returned the gun to the car. Subsequently, Gomez put his "arm around" Perez and led Perez to defendant's car, then Gomez returned to his car and drove to St. Paul Avenue. Victor, accompanied by defendant and Perez, followed Gomez in defendant's car. During the drive, defendant told Perez that Gomez was from the "D's." Victor explained that the "D's" were a street gang affiliated with a larger gang known as the "Folks," and that they were enemies of the gang to which Victor and defendant belonged.

Upon arriving at St. Paul Avenue, defendant, along with Perez, and Gomez got out of their respective cars. Victor remained in defendant's car. Victor testified that, as he was turning the car around, he heard "four or five" gunshots. In his side, rearview mirror, Victor saw Perez lying on the ground and defendant standing next to the body with a shotgun in his hand.

Following trial, the jury found defendant guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) and murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)). At the death penalty hearing requested by the State, the jury found that there existed one or more of the aggravating factors in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)), and that there were no mitigating factors sufficient to preclude a sentence of death. The trial court then sentenced defendant to death.

Defendant's sentence was stayed (134 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d R. 603). Before his appeal was heard, defendant filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 et seq.), which was denied following an evidentiary hearing. Defendant's appeal from the denial of post-conviction relief was consolidated with the appeal of his conviction and sentence. This court affirmed defend-

ant's conviction and sentence, as well as the denial of post-conviction relief. (*People v. Flores* (1989), 128 Ill. 2d 66.) Subsequently, the United States Supreme Court denied defendant's petition for writ of *certiorari.* (*Flores v. Illinois* (1990), 497 U.S. 1031, 111 L. Ed. 2d 799, 110 S. Ct. 3291.) Defendant then instituted this present action for post-conviction relief. (Ill. Rev. Stat. 1989, ch. 38, par. 122–1 *et seq.*) Upon the State's motion, the trial court dismissed defendant's petition without an evidentiary hearing. It is from that dismissal which defendant now appeals.

In this appeal, defendant requests that this court vacate his death sentence and remand for the imposition of a prison term or, in the alternative, remand for a new death penalty hearing. He raises three issues in support of his appeal for post-conviction relief. Specifically, defendant contends that he was denied effective assistance of counsel on direct appeal and in his first post-conviction proceeding in violation of the sixth amendment because (1) counsel failed to recognize and assert an error which occurred in the State's closing argument to the jury and (2) counsel failed to assert as error the disparate sentencing between defendant and his co-defendant, Harry Gomez; and his death sentence violates the eighth amendment because (3) it is arbitrarily premised upon the actions of his codefendant, Gomez. We find that the trial court's dismissal of defendant's post-conviction petition was proper and, accordingly, we affirm.

## POST-CONVICTION HEARING ACT

The Post-Conviction Hearing Act (Act) provides a remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 510.) The post-conviction proceeding is not an appeal *per se* but is, instead, a collateral attack on a prior judgment.

(*People v. Ruiz* (1989), 132 Ill. 2d 1, 9.) To be entitled to post-conviction relief, the defendant must establish that a substantial violation occurred at the proceeding that produced the judgment under attack. (*Ruiz*, 132 Ill. 2d at 9; Ill. Rev. Stat. 1991, ch. 38, par. 122—1.) A trial court's determination on a post-conviction proceeding will not be reversed unless contrary to the manifest weight of the evidence. *Eddmonds*, 143 Ill. 2d at 514.

## DISCUSSION

### I. Successive Post-Conviction Petitions

Initially, the State argues that defendant's present post-conviction claims are not properly before this court. Thus, at the outset, we must determine a defendant's entitlement to consideration of a second or subsequent post-conviction petition.

Defendant, in his brief, makes no attempt to justify our consideration of his present post-conviction claims. However, at oral argument, defense counsel offered the following rationale for filing the second post-conviction petition. Defense counsel stated that upon this court's affirmance of both defendant's conviction and the denial of post-conviction relief, defendant's appellate counsel withdrew from the case. This court then appointed current counsel to represent defendant in any subsequent proceedings. Upon being appointed, current counsel noticed that prior counsel failed to assert as error in the prior proceedings the claimed errors now presented. Believing these unasserted errors to be meritorious, and in light of the seriousness of the penalty imposed in this case, defendant filed a second post-conviction petition.

The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition. (*People v. Free* (1989), 122 Ill. 2d 367, 375.) Successive petitions may, however, be allowed where the proceedings on the initial

petition were deficient in some fundamental way. See *Free*, 122 Ill. 2d at 376, citing *People v. Nichols* (1972), 51 Ill. 2d 244, 246; *People v. Hollins* (1972), 51 Ill. 2d 68, 70; *People v. Slaughter* (1968), 39 Ill. 2d 278.

The filing of successive post-conviction petitions sets up two competing interests. On the one hand, there is the State's interest in providing a forum for the vindication of the petitioner's constitutional rights. On the other hand, the State has a legitimate interest in the finality of criminal litigation and judgments. "Without finality, the criminal law is deprived of much of its deterrent effect." (*Teague v. Lane* (1989), 489 U.S. 288, 309, 103 L. Ed. 2d 334, 355, 109 S. Ct. 1060, 1074.) The successive filing of post-conviction petitions plagues that finality.

In Illinois, the operation of waiver and *res judicata* has generally contributed to the finality of criminal litigation. Section 122—3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Ill. Rev. Stat. 1991, ch. 38, par. 122—3.) Additionally, "a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or *could have been raised* in the initial petition." (Emphasis added.) (*Free*, 122 Ill. 2d at 376.) Further, any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. (Ill. Rev. Stat. 1991, ch. 38, par. 122—2.1.) Finally, where a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived. (*People v. Neal* (1990), 142 Ill. 2d 140, 146; *People v. Stewart* (1988), 121 Ill. 2d 93, 104.) However, where fundamental fairness so requires, strict application of procedural bars may be relaxed. *People v. Gaines*

(1984), 105 Ill. 2d 79, 91; *People v. Hollins* (1972), 51 Ill. 2d 68; *People v. Slaughter* (1968), 39 Ill. 2d 278, 285.

We note also that the statutory time limitation contributes to finality. (See Ill. Rev. Stat. 1991, ch. 38, par. 122—1.) This section, recently amended by the legislature, severely limits the time period in which a defendant may file a petition for post-conviction relief. Effective January 1992, no post-conviction proceeding shall be commenced more than 3 years, instead of 10 years, after the rendition of the final judgment. Ill. Ann. Stat., ch. 38, par. 122—1, Historical & Statutory Notes, at 48 (Smith-Hurd Supp. 1992).

Where, however, the claimed error is one which could not have been presented in an earlier proceeding, procedural bars may be ineffectual in bringing about that finality which ordinarily follows direct appeal and the first post-conviction proceeding. In such cases, there is the potential that a second or subsequent post-conviction petition may be filed, thus defeating finality. *People v. Stewart* (1990), 141 Ill. 2d 107, is exemplary. The defendant in *Stewart* filed a second post-conviction petition. Counsel who represented the defendant in the second post-conviction proceeding was other than counsel who had represented the defendant at trial, on direct appeal and at his first post-conviction proceeding. In the second petition, the defendant asserted "tiers" of ineffective assistance against counsel who had represented him in prior proceedings.

The case now before us presents circumstances similar to those in *Stewart*. We have occasion, therefore, to consider the procedural rules which govern the filing of successive post-conviction petitions which present a question of effective assistance of counsel which could not have been presented in an earlier post-trial proceeding.

We first examine the propriety of bringing a second post-conviction petition which seeks relief from ineffec-

tive assistance of post-conviction counsel in the first post-conviction proceeding.

Although there is a sixth amendment right to counsel at trial (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052), the right has not been found to apply in post-conviction proceedings (see *Pennsylvania v. Finley* (1987), 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993; see also *Murray v. Giarrantano* (1989), 492 U.S. 1, 106 L. Ed. 2d 1, 109 S. Ct. 2765 (applying the rule to capital cases)). Indeed, in Illinois, " 'the right to counsel at post-conviction proceedings is a matter of legislative grace and favor which may be altered by the legislature at will.' " *People v. Porter* (1988), 122 Ill. 2d 64, 72, quoting *People v. Ward* (1984), 124 Ill. App. 3d 974, 978.

Because the right to counsel in post-conviction proceedings is derived from statute rather than the Federal or State Constitutions, post-conviction petitioners are guaranteed only the level of assistance provided for by the Act. That assistance has been defined by this court to mean a "reasonable" level of assistance. (*People v. Wright* (1992), 149 Ill. 2d 36, 64, citing *People v. Owens* (1990), 139 Ill. 2d 351, 364.) Consequently, a petitioner cannot claim sixth amendment ineffective assistance of counsel in such proceedings. (See *Wainwright v. Torna* (1982), 455 U.S. 586, 71 L. Ed. 2d 475, 102 S. Ct. 1300 (holding that where there is no constitutional right to counsel there can be no deprivation of effective assistance); see also *Coleman v. Thompson* (1991), 501 U.S. 722, 115 L. Ed. 2d 640, 111 S. Ct. 2546.) Therefore, because the Act was designed to address only deprivations of constitutional magnitude, a petitioner's claim of ineffective assistance of post-conviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act.

We note, additionally, that the Act expressly provides that the petitioner may assert claims of a constitutional magnitude which occurred *"in the proceeding which resulted in [the petitioner's] conviction."* (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 122—1.) The purpose of the post-conviction proceeding is to permit inquiry into the constitutional issues involved in the "original" proceeding. (*People v. Silagy* (1987), 116 Ill. 2d 357, 365.) The Act does not, however, provide a forum to test the propriety of conduct at an earlier post-conviction proceeding. Thus, where a petitioner files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, consideration of those claims is beyond the scope of the Act.

We next address the propriety of presenting, in a second or subsequent post-conviction petition, a claim of ineffective assistance of appellate counsel. In contrast to post-conviction proceedings, a defendant is guaranteed the effective assistance of appellate counsel as of right. (*Evitts v. Lucey* (1985), 469 U.S. 387, 393-97, 83 L. Ed. 2d 821, 828-30, 105 S. Ct. 830, 834-37; *People v. Avitia* (1989), 178 Ill. App. 3d 968, 970.) Thus, the filing of successive post-conviction petitions, wherein the petitioner claims ineffective assistance of appellate counsel, requires us to consider the State's interest in finality in light of the petitioner's right to constitutionally guaranteed protections.

We recognize, as does apparently the State, the ease with which a petitioner may evade the operation of waiver and *res judicata* simply by couching his claims in the context of ineffective assistance. In that regard, we reiterate the rule that a petitioner cannot obtain relief under the Post-Conviction Hearing Act simply by "rephrasing previously addressed issues in constitutional terms" in his petition. (*People v. Gaines* (1984), 105 Ill.

2d 79, 90; *Silagy*, 116 Ill. 2d at 371.) Such claims will be properly defeated by operation of waiver and *res judicata*. Further, we hold that where a petitioner merely attaches a constitutional label to factual allegations that do not themselves raise an issue of constitutional proportion the petition should be dismissed.

The sixth amendment right to counsel is the " 'right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14, 90 S. Ct. 1441, 1449 n.14.) The right to counsel ensures the defendant's right to a fair trial, the denial of which constitutes a denial of due process. "An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 697, 104 S. Ct. at 2068.) Thus, where a petitioner, in a second or subsequent post-conviction petition, raises a meritorious sixth amendment claim, considerations of finality provide an insufficient basis for the courts to compromise the constitutional protections afforded a post-conviction petitioner under the Act and are, necessarily, overridden. Moreover, where a defaulted claim stems from the incompetency of appellate counsel and results in prejudice to the defendant, there can be no doubt that the proceeding on the first petition was deficient in a fundamental way. See *People v. Slaughter* (1968), 39 Ill. 2d 278 (cause remanded for consideration of second post-conviction petition on its merits where appointed counsel in the first post-conviction proceeding did not adequately represent defendant and second petition was dismissed on assumed ground that the Act contemplates that only one petition be filed).

We note, parenthetically, that the Supreme Court has recently considered the propriety of filing successive pe-

titions in the context of *habeas corpus* relief. In the interest of finality, and in an effort to curtail "abuse of the writ" (28 U.S.C. §2254 R. 9(b) (1988)), the Court, in *McCleskey v. Zant* (1991), 499 U.S. 467, 113 L. Ed. 2d 517, 111 S. Ct. 1454, adopted the "cause and prejudice" test. Under *McCleskey*, where a petitioner files a second or subsequent application for *habeas* relief in which he alleges *errors which could have been presented in a prior proceeding*, he must demonstrate "cause" for failing to raise the error and actual "prejudice" resulting from the claimed errors. Even where cause and prejudice are absent, Federal courts may, nonetheless, entertain successive claims if necessary to prevent a fundamental miscarriage of justice.

"Cause" has been defined as " 'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim" in an earlier proceeding. (*McCleskey*, 499 U.S. at 493, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470, quoting *Murray v. Carrier* (1986), 477 U.S. 478, 488, 91 L. Ed. 2d 397, 408, 106 S. Ct. 2639, 2645.) In defining "prejudice," the *McCleskey* Court cited to *United States v. Frady* (1981), 456 U.S. 152, 169, 71 L. Ed. 2d 816, 831, 102 S. Ct. 1584, 1595, quoting *Henderson v. Kibbe* (1977), 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1737, in which prejudice is defined as an error which " 'so infected the entire trial that the resulting conviction violates due process.' " Satisfaction of the "cause and prejudice" test will excuse a procedural default. (*McCleskey*, 499 U.S. at 493-94, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470.) In that regard, we note that operation of the test is similar to, and accomplishes no more than, our fundamental fairness concept. See *Gaines*, 105 Ill. 2d at 91 (holding that where fundamental fairness requires, application of *res judicata* may be relaxed); see also *Hollins*, 51 Ill. 2d at 70 (holding that fundamental fairness dictates relaxation of waiver).

Although attorney error short of ineffective assistance of counsel does not constitute cause, *"[c]onstitutionally* '[i]neffective assistance of counsel ... is cause.' " (Emphasis added.) (*McCleskey*, 499 U.S. at 494, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470, quoting *Murray v. Carrier* (1986), 477 U.S. 478, 488, 91 L. Ed. 2d 397, 409, 106 S. Ct. 2639, 2645.) Whether the seemingly narrower test of prejudice required in a *Strickland* analysis satisfies the requisite showing of prejudice under *McCleskey* is uncertain. (See *MacDonald v. Bender* (D. Mass. July 1992), No. 86—3452—WF.) We note that, in either case, the inquiry is whether the defendant has been denied due process.

In sum, where a defendant files a second or subsequent post-conviction petition in which he claims sixth amendment ineffective assistance of prior post-conviction counsel, because there is no right to sixth amendment counsel in post-conviction proceedings, such claims do not present a basis upon which relief may be granted under the Act. Further, where a defendant files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, because the Act is confined to errors which occurred in the original proceeding only, such claims are beyond the scope of the Act.

Where, however, a defendant files a second or subsequent post-conviction petition in which he raises meritorious claims of ineffective assistance of appellate counsel, which could not have been raised in a prior post-trial proceeding, the defendant is entitled to consideration of those claims.

## II. Petitioner's Post-Conviction Claims

As we have stated, in his present attack on the denial of post-conviction relief, defendant alleges three errors, the first two of which are raised in the context of inef-

fective-assistance claims. We will address the viability of petitioner's third claimed error first.

## A. *Application of Waiver and Res Judicata*

Defendant's third claimed error is that the application of the armed robbery as an aggravating factor to support the imposition of the death penalty was arbitrary.

Initially, we note that this issue was not presented to the trial court in defendant's present post-conviction petition. Further, this issue was not raised on direct appeal or in defendant's first post-conviction petition. Because this issue could have been raised in defendant's first post-conviction petition, it is *res judicata*. (See *Free*, 122 Ill. 2d at 376.) Additionally, even if the issue were not *res judicata*, because defendant could have presented the issue on direct appeal, in his first post-conviction petition and, certainly, in his second post-conviction petition, the issue is waived. See *Neal*, 142 Ill. 2d at 146; Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1.

We next address petitioner's ineffective-assistance claims. Petitioner asserts that prior appellate counsel's omission of certain errors on direct appeal and in the first post-conviction proceeding constituted ineffective assistance. The State argues that the alleged errors which underlie defendant's ineffective-assistance claims could have been raised in defendant's first post-conviction proceeding. The State urges that defendant couches the alleged errors in a claim of ineffective assistance merely to avoid the bar of *res judicata* and waiver.

True, the errors which underlie petitioner's current post-conviction claims of ineffective assistance could have been raised in the prior post-trial proceedings. However, it is the failure to raise those claimed errors which forms the basis of defendant's ineffectiveness claim. Obviously, because defendant's ineffective-assistance claims concern errors which allegedly occurred on

direct appeal and in the first post-conviction proceeding, and are asserted against the attorney who represented defendant in those proceedings, defendant's present claims *could not have been raised in those prior proceedings*. Thus, defendant's ineffectiveness claims are neither *res judicata* (see *Free*, 122 Ill. 2d at 376) nor waived (see *Stewart*, 121 Ill. 2d at 104). (See *People v. Gaines* (1984), 105 Ill. 2d 79 (holding that petitioner's post-conviction claim of ineffective assistance of counsel at trial and on direct appeal would not be barred as *res judicata* where same attorney represented defendant at trial and on direct appeal because it would be unreasonable to expect appellate counsel to raise and argue his own incompetency).) Moreover, in *People v. Frank* (1971), 48 Ill. 2d 500, 503, this court noted its earlier suggestion that the doctrine of waiver ought not to bar consideration of issues under the Act where the alleged waiver stems from incompetency of appellate counsel. The court stated that this "notion comports with related holdings that waiver will not apply where it would act as a denial of due process [citations]."

Incidentally, we note that in this case, because all claims of ineffective assistance of appellate counsel could have been presented in this present post-conviction proceeding, absent a showing that fundamental fairness requires consideration, an attempt to raise any such claim in a subsequent post-conviction petition would be effectively barred by operation of waiver and *res judicata*.

Notwithstanding defendant's motivation, we believe that his present claims of ineffective assistance of appellate counsel are now properly before us. We conclude, for purposes of complete disposition of the issues presented in this appeal, that because defendant's claims of ineffective assistance of post-conviction counsel are beyond the scope of the Act, they are not properly before

us. We therefore confine our discussion solely to defendant's claimed errors arising on direct appeal.

### B. *Ineffective Assistance of Counsel*

*Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, established a stringent two-pronged test for evaluating claims of ineffective assistance of counsel, which this court adopted in *People v. Albanese* (1984), 104 Ill. 2d 504. Under *Strickland*, a defendant must first demonstrate that counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Secondly, a defendant must demonstrate that counsel's deficient performance substantially prejudiced his defense. To demonstrate prejudice, a defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A defendant who contends that appellate counsel rendered ineffective assistance, for example by failing to argue a particular issue, must show that "the failure to raise that issue was objectively unreasonable" and that, "but for this failure, his sentence or conviction would have been reversed." (*People v. Caballero* (1989), 126 Ill. 2d 248, 270.) Both prongs of the *Strickland* test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel.

A court need not consider whether counsel's performance was deficient prior to examining the prejudice suffered by the defendant as a result of the alleged deficiencies. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) Where the ineffectiveness claim can be disposed of on the ground that the defendant did not suffer sufficient prejudice, the court need not deter-

mine whether counsel's performance constituted less than reasonably effective assistance. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 512; *Albanese*, 104 Ill. 2d at 527.

Prosecutor's Closing Argument

Defendant first contends that the prosecutor's rebuttal closing argument to the jury at the death penalty hearing diminished the jury's sense of responsibility in violation of *Caldwell v. Mississippi* (1985), 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633. The State maintains that there was no *Caldwell* violation.

The record reveals that in rebuttal closing argument at the aggravation phase of defendant's sentencing hearing, the following colloquy occurred:

"MR. BRADY [Assistant State's Attorney]: You are asked to decide a question. The question here is does Mario Flores fit into the law that states that everyone who commits murder shall be sentenced to the death penalty unless there are sufficient mitigating circumstances to preclude. Your decision [is whether] there will be other mitigating circumstances to preclude this court from sentencing Mario Flores to the ultimate penalty.

\* \* \*

MR. BRADY: We're asking you to go back there, read the instructions, read all the instructions. You are not the sentencing party. This court sentences this man.

MR. JOHNSON [Defense Counsel]: Objection, Judge.

MR. BRADY: Read it in the instructions.

THE COURT: I'll read it.

MR. BRADY: It says in the instruction, you will be instructed by Judge Bailey that if there are no mitigating factors or—*if you decide to sign the form the Court must sentence the Defendant to death*. The Court is here. You are the jury. He does the sentencing in this courtroom.

THE COURT: Ladies and gentlemen, I'll talk to you for the last time before you go and begin your deliberations." (Emphasis added.)

We note also that in his opening statement at defendant's sentencing hearing, the prosecutor advised the jury that by the signing of the verdict form, "that would allow the defendant to receive the death penalty in this case."

In *Caldwell*, 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633, the prosecutor told the sentencing jury that its decision would not be a final decision because it was subject to automatic review by the State supreme court. The trial court overruled defense counsel's objection and further expressed that the information was proper for the jury to hear. On review, the Supreme Court found that the prosecutor's statements misled the jury to believe that the responsibility for determining the appropriateness of the defendant's death rested elsewhere.

In determining whether the remarks were violative of the defendant's constitutional rights, the Court in *Caldwell* focused on the nature of the remarks and the trial court's response. (*Caldwell*, 472 U.S. at 339-40, 86 L. Ed. 2d at 246, 105 S. Ct. at 2645.) Because the Court could not say that the remarks "had no effect on the sentencing decision," the Court held that the sentence did not meet the eighth amendment standard of reliability. *Caldwell*, 472 U.S. at 341, 86 L. Ed. 2d at 247, 105 S. Ct. at 2646.

The "no effect" language in *Caldwell* has created a growing controversy, at least in the Federal circuits, concerning the appropriate standard of review of *Caldwell* claims. The Fifth Circuit maintains that by the language in *Caldwell* the Supreme Court erected a "no effect" standard of review. (See *Sawyer v. Butler* (5th Cir. 1989), 881 F.2d 1273.) The Tenth and Eleventh Circuits have rejected the "no effect" standard, construing it to require a *per se* reversal merely upon a finding of improper remarks. The Tenth Circuit has, instead, adopted a "substantial possibility" standard (see *Hopkinson v. Shillinger* (10th Cir. 1989), 888 F.2d 1286), while the Eleventh Circuit has

adopted a "fundamental fairness" approach (see *Tucker v. Kemp* (11th Cir. 1986), 802 F.2d 1293). The Supreme Court has not spoken on the breadth of the "no effect" language in *Caldwell.*

Regardless of the varying standards of review in the different Federal circuits, the scope of those courts' analyses has been expansive, involving more than simply an evaluation of the improper remarks. See *Sawyer,* 881 F.2d at 1286-87 ("no effect" test—inquiry is whether under all circumstances, including entire trial record, the State misled the jury); *Hopkinson,* 888 F.2d at 1295-96 ("substantial possibility" test—evaluation requires two-step process: (1) determination of whether remark tends to shift responsibility; (2) evaluation of effect of statement including consideration of jury instructions); *Tucker,* 802 F.2d 1293 ("fundamental fairness" test—consideration given to entire sentencing proceeding and jury instructions).

This court has not previously articulated a standard for evaluating *Caldwell* claims. (But see *People v. Howard* (1991), 147 Ill. 2d 103, 164 (court stated, "we do not believe that the misstatements now challenged had any effect on the jury's deliberations").) However, we are persuaded that the seemingly more stringent "no effect" standard is appropriate. (See *Darden v. Wainwright* (1985), 477 U.S. 168, 196, 91 L. Ed. 2d 144, 167, 106 S. Ct. 2464, 2479 (Blackmun, J., dissenting, joined by Brennan, Marshall & Stevens, JJ.) (stating that the *Darden* majority "rejects the 'no effect' test set out in *Caldwell*"); *Moore v. Blackburn* (1986), 476 U.S. 1176, 90 L. Ed. 2d 990, 106 S. Ct. 2904 (Marshall, J., dissenting, joined by Brennan, J. (the authoring justice in *Caldwell,* Justice Marshall noted in dissenting from a denial of *certiorari* that under *Caldwell,* the petitioner's sentence could not stand unless the asserted error "had no effect on the sentencing decision")); see also Mello, *Taking Caldwell v. Mississippi Seriously: The Unconstitutionality of Capital Statutes That Divide Sentencing Responsibility Between*

*Judge and Jury*, 30 B.C. L. Rev. 283, 335 (1989).) However, as *Sawyer* teaches, adoption of the "no effect" standard, or any particular standard for that matter (see *Hopkinson*, 888 F.2d at 1295-96; *Tucker*, 802 F.2d 1293), does not require us to abandon our previous decisions on asserted *Caldwell* claims.

Certain factors guide us in our evaluation. The *Caldwell* Court, in gauging the State's conduct, considered that the prosecutor's remarks were "focused, unambiguous and strong" and were not corrected by an appropriate instruction (see *Caldwell*, 472 U.S. at 339-40, 86 L. Ed. 2d at 246, 105 S. Ct. at 2645). These factors were regarded by the Court as significant in its distinction of *Donnelly v. De Christoforo* (1974), 416 U.S. 637, 40 L. Ed. 2d 431, 94 S. Ct. 1868, an earlier case analyzing prosecutorial comments. We do not view, and *Caldwell* does not suggest, these factors as exhaustive in the analysis of an asserted *Caldwell* violation.

Prior decisions of this court are also instructive on the scope of *Caldwell* and its applicability to the statements made by the prosecutor in this case. When confronted with a *Caldwell* claim, in addition to the factors relied upon in *Caldwell*, this court has evaluated the comments in the context of the entire sentencing proceeding (see, *e.g., People v. Johnson* (1991), 146 Ill. 2d 109; *People v. Fields* (1990), 135 Ill. 2d 18); considered whether the jury instructions and the verdict forms accurately set forth the law (see, *e.g., Fields*, 135 Ill. 2d 18; *People v. Perez* (1985), 108 Ill. 2d 70); and has even considered the balance between aggravating and mitigating factors at sentencing (see, *e.g., Howard* (1991), 147 Ill. 2d 103). The relevant inquiry, then, is whether in consideration of all facts and circumstances, the State has misled the jury regarding its sentencing role. No single factor is necessarily dispositive.

The State urges that the prosecutor's "entire" rebuttal closing argument was invited by the emotional appeal of

defense counsel in his preceding argument, in which he characterized the jurors as potential murderers.

Even conceding that the prosecutor's comments were invited, we fail to see how that fact makes it any less likely that the jury was misled. A similar invited error argument was rejected in *Caldwell*, 472 U.S. at 336-37, 86 L. Ed. 2d at 244, 105 S. Ct. at 2643-44, and in *People v. Yates* (1983), 98 Ill. 2d 502, 537, a pre-*Caldwell* case. The critical inquiry is whether the objectionable comments improperly diminished the jury's sense of responsibility.

We first consider the nature and content of the prosecutor's remarks. Pursuant to the statutory scheme in Illinois, it is the jury's role to determine whether a defendant shall be sentenced to death. (See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g).) The capital sentencing jury bears the sole responsibility for that determination, and it may "not be informed either directly or by implication that this responsibility is shared or rests with the trial court." (*People v. Fields* (1990), 135 Ill. 2d 18, 57.) Once the jury determines that death is the appropriate sentence, the judge must so sentence the defendant. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g).

A literal reading of the sentencing statute suggests that the prosecutor's statement that the jury "was not the sentencing party" was a correct statement of the law. However, the proper assessment of the correctness of the statement requires an understanding of the varying functions of judge and jury in a capital sentencing proceeding. The jury determines the appropriateness of a death sentence, while the judge imposes the sentence. (See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g).) Significantly, the judge is bound by the jury's determination. Thus, even though it is the judge who imposes the sentence, the jury is, in effect, the sentencing party. Although we cannot wholly agree with defendant that the prosecutor's statement was incorrect, we nonetheless believe that the statement had the po-

tential to mislead the jury concerning its sentencing responsibility. Thus, we will examine the statement closely to determine its effect.

We cannot, however, consider the statement in a vacuum; we must, instead, evaluate the remark in the context of the entirety of the prosecutor's argument. (See *Darden*, 477 U.S. at 179, 91 L. Ed. 2d at 156, 106 S. Ct. at 2470.) Though the prosecutor conveyed to the jury that it was not the sentencing body, he also informed the jury that if it decided to sign the verdict forms, the court must sentence defendant to death. The remark concerning the verdict forms clearly indicated to the jury the gravity of its task. We, nevertheless, perceive the remarks to have been confusing and ambiguous, a finding which defendant would assert is sufficient to support a *Caldwell* claim. We would disagree with that assertion.

There is a wealth of Federal and State court decisions which have evaluated assertions of a violation of *Caldwell*. Our review of decisions that have invalidated sentencing decisions under *Caldwell* involved prosecutorial remarks that clearly and unequivocally shifted the ultimate sentencing responsibility away from the jury. (See *Wheat v. Thigpen* (5th Cir. 1986), 793 F.2d 621 (jury told that death penalty decision would not be final and if jury made a mistake a reviewing court would send case back); *Mann v. Dugger* (11th Cir. 1988), 844 F.2d 1446 (jury repeatedly told during guilt and sentencing phase of trial that its decision was only an "advisory" recommendation and that sentencing decision was not on its shoulders).) Though the comments here were potentially misleading, they were not clear or focused in attempting to shift the sentencing responsibility as were the comments in *Caldwell, Wheat,* or *Mann*. That notwithstanding, having determined that a portion of the prosecutor's comments were potentially misleading, we do not yet end our analysis.

We also consider the trial court's response to defense counsel's objection. Defendant maintains that the trial court's response, *viz.*, "I'll read it," merely confused the jury and had no curative effect. He invites our attention to *People v. Yates* (1983), 98 Ill. 2d 502, 535-38, apparently to demonstrate that a curative instruction will not always remedy a *Caldwell* violation.

We continue to agree with *Yates*. Further, we agree with defendant that the trial court's response did not constitute a curative instruction and, as such, it had no remedial effect. Thus, *Yates* is inapposite.

Defendant characterizes the court's response as an endorsement of the "incorrect" remarks. He then attempts to distinguish *People v. Fields* (1990), 135 Ill. 2d 18. In *Fields*, in addition to arguing that the jury would be making a recommendation to the court, the prosecutor commented that the jury was not going to be sentencing the defendant to death. This court found no reversible error because, among other things, the trial judge twice admonished the jury that its decision regarding the death penalty was binding on the court. Defendant here argues that, in contrast to the present case, the trial court in *Fields* did not endorse the improper comments, and immediately informed the jury of the effect of its determination.

We do not view the court's assertion of its function to instruct the jury as an endorsement of any "improper" comments. Although our preference would have been for the trial court to give an instruction to clarify the responsibilities of the judge and jury, the fact that the court responded otherwise did not automatically convert its response into an endorsement of the prosecutor's argument.

Before continuing with our analysis, we note that *Frye v. Commonwealth* (1986), 231 Va. 370, 345 S.E.2d 267, a case upon which defendant relies, is inapposite. In *Frye*, the trial court put its imprimatur on the prosecutor's im-

proper remarks. Here, as we have discussed, the trial court did not endorse the prosecutor's remarks.

Finally, we consider the effect on the jury of the jury instructions and the verdict forms. Though defendant concedes that the trial court's instructions to the jury are a correct statement of the law, he maintains that the instructions, coupled with the prosecutor's argument and the court's ruling thereon, confused the jury as to who bears the ultimate responsibility to impose the death sentence.

We disagree. In considering the impact of the prosecutor's remarks we, necessarily, have reviewed the record of defendant's sentencing hearing in its entirety. Significantly, at the eligibility phase of the hearing, the trial court instructed the jury as follows:

"THE COURT: It is the law of this state that every person found guilty of murder shall be put to death or imprisoned. Only you can determine that the death penalty shall be imposed by the Court. If you do not do so, the Court will sentence the Defendant to a term of imprisonment.

* * *

This hearing will be in two separate phases in which it will be your duty to determine, first, whether the Defendant is or is not eligible to receive a sentence of death; and second, if the Defendant is eligible, whether or not the sentence of death will be imposed in this case.

* * *

During the second phase of the hearing, both the State and the Defendant will have an opportunity to present facts either in favor of imposing or in favor of withholding the sentence of death. If you unanimously find that the sentence of death shall be imposed in this case, the Court will sentence the Defendant to death."

Immediately following the State's rebuttal closing argument, the trial court instructed the jury on the death penalty pursuant to Illinois Pattern Jury Instructions, Criminal, Nos. 7A.15 and 7A.16 (2d ed. 1981). Additionally, each

juror signed the verdict form which stated that the jury unanimously concluded that there was no mitigating factor sufficient to preclude the imposition of the death sentence and that the court shall sentence the defendant to death.

Here, in seeking a determination that *Caldwell* has been violated, defendant asks this court to discount the effect of the trial court's several oral instructions to the jury and find that the prosecutor's statements of law had greater impact on the jury's death penalty determination. We decline to do so.

A judge's statements have a particularly powerful effect on juries which is not so easily overcome. The very first and the very last instructions given by the trial judge to the jury during the sentencing phase of defendant's trial were correct statements of the jury's sentencing responsibility. Beyond the oral instructions, the jury was given, and signed, the verdict forms which properly set out the roles of the court and the jury. We believe that the court's instructions adequately apprised the jury of its task, and were sufficient to disabuse the jury of any misperception that that responsibility lay elsewhere.

The prosecutor's comments, which this court examined, in *People v. Johnson* (1991), 146 Ill. 2d 109, closely resemble the comments in this case. In *Johnson*, the prosecutor made the following comment:

> " 'Look at the verdict forms, Ladies and Gentlemen, and you will see what they tell you. You are to determine if there are sufficient mitigating factors to preclude the imposition of the death penalty. It says the court, His Honor, Judge Bailey, shall sentence the defendant. You don't sentence the defendant. You don't sentence him. You look and see if there are sufficient mitigating factors.' " (*Johnson*, 146 Ill. 2d at 146.)

This court concluded that the statements were "improper under *Caldwell*." However, the court stated that given the context in which the statements were made, the comments

did not mislead the jury. The court noted that the prosecutor also admonished the jury of its burden in making a decision, the trial court instructed the jury that it "shall" sentence defendant to death, and the verdict form correctly informed the jury as to who bore the responsibility for imposing death. *Johnson*, 146 Ill. 2d at 147.

Here, in his attempt to respond to defense counsel's impassioned argument, the prosecutor potentially misled the jury by stating that it did not sentence defendant. However, we find, as in *Johnson*, that the prosecutor also admonished the jury regarding its sentencing role, and that the instructions and verdict forms signed by the jurors properly informed the jury of the binding nature of its determination on the court.

In sum, we find that a portion of the prosecutor's argument to the jury included potentially misleading statements. That notwithstanding, the prosecutor admonished the jury to follow the law. Further, despite the absence of any clarifying instruction at the time the statements were made, we are unable to discount the impact of the several jury instructions given during the sentencing phase of defendant's trial and recited in the verdict forms. Thus, we find that the prosecutor's argument did not improperly diminish the jury's sense of responsibility to impose the death penalty.

Because we find defendant's claimed *Caldwell* violation to be without merit, we cannot conclude that defendant was prejudiced by prior appellate counsel's performance. On this issue, defendant has failed to satisfy the prejudice prong of *Strickland*.

### Disparate Sentencing

Defendant next contends that his sentence is unfairly disparate to that of his codefendant, Gomez, in violation of the eighth amendment. Gomez was sentenced to 40 years' imprisonment. Parenthetically, we note that on di-

rect appeal, defendant claimed that his death sentence was disproportionate and excessive. This court held that the penalty was commensurate with the gravity of the offense and the character of the defendant. See *People v. Flores* (1989), 128 Ill. 2d 66, 100-01.

This court has a duty, pursuant to both the United States and the Illinois Constitutions, to determine whether a death sentence has been imposed arbitrarily or capriciously. (*People v. Bean* (1990), 137 Ill. 2d 65, 134.) To that end, this court has compared a defendant's death sentence to the sentence of a codefendant. (See *Bean*, 137 Ill. 2d at 134; *People v. Jimerson* (1989), 127 Ill. 2d 12, 53-54; *People v. Gleckler* (1980), 82 Ill. 2d 145, 161-71.) In prior decisions, the focus of our comparative analysis has been on the particular defendant's extent of involvement in the offense, the nature of the offense, the character and background of the defendant, including any criminal record, as well as his potential for rehabilitation. (See *People v. Jackson* (1991), 145 Ill. 2d 43; *Bean*, 137 Ill. 2d 65; *Gleckler*, 82 Ill. 2d 145.) A disparity in sentences will not be disturbed where it is warranted by differences in the nature and extent of the concerned defendant's participation in the offense. *People v. Godinez* (1982), 91 Ill. 2d 47, 55.

The premises of defendant's disparate sentencing claim are that (1) the codefendant (Gomez) was more culpable than defendant; and (2) Gomez was subject to more aggravating factors than defendant.

In support of his argument that Gomez was the more culpable participant in the commission of the charged offenses, defendant makes the following assertions: when defendant retrieved the shotgun from his car at the accident scene, Gomez instructed defendant to put the gun away; Gomez escorted the victim to defendant's car, in which the victim was driven to the murder scene; Gomez drove the lead car to the murder scene; and Gomez took the gold chains from the victim's body. Further, defendant

asserts, the evidence "suggests" the possibility that Gomez may also have shot the victim, because there could have been a gun concealed in Gomez's car, the only eyewitness to the shooting did not see who actually shot the victim, and the State's ballistics expert left open the possibility that more than one shotgun was used in the murder.

Defendant's assertions hardly support a conclusion that Gomez was the more culpable in the commission of this offense. Significantly, defendant makes no claim that Gomez directed, ordered, or otherwise instructed defendant to repeatedly shoot the victim. Further, defendant has not provided any evidence to support his assertion that Gomez might also have shot the victim. The jury heard the evidence and apparently believed that defendant actually shot the victim. We decline either to reweigh the evidence or to speculate concerning its infirmities. *Cf. People v. Ashford* (1988), 121 Ill. 2d 55 (no improper sentencing disparity where defendant had no significant criminal background, but was essentially the triggerman, firing all or nearly all of the fatal shots).

Defendant's second premise is equally unavailing. Defendant argues that Gomez had more aggravating circumstances than defendant. Specifically, defendant points to the facts that Gomez was older than defendant, had prior convictions for unlawful use of a weapon, theft, and aggravated indecent liberties with a child, and had been sentenced to prison. Our review of Gomez's criminal record and presentence investigation, which defendant has included as part of the post-conviction record, indicates that in October 1984, Gomez was convicted of attempted murder and theft and was sentenced to concurrent prison terms of eight and three years. (The fact concerning the attempted murder conviction was omitted from defendant's brief; however, it was included in his post-conviction petition.)

In contrast, defendant's prior adjudications of delinquency were for nonviolent acts, for which he received probation. Unlike Gomez, defendant's prior offenses included conduct such as trespass to vehicles, retail theft, and possession of a stolen vehicle. Further, defendant argues that the mitigation evidence presented on his behalf demonstrated that the potential for his rehabilitation was far greater than for Gomez. Defendant notes that he was a high school "all-American" diver, has behaved well while in custody, and has expressed a desire to counsel young inmates.

We do not discount the significance of defendant's mitigation evidence. However, we also find significant that at the aggravation phase of defendant's sentencing hearing, Louis Rosero testified that on August 5, 1984, only months after the Perez murder, defendant stopped him on the street and inquired whether Rosero would accept a set of tires in lieu of payment for a debt the defendant owed him. According to Rosero, defendant told him to meet him in an alley. When Rosero arrived, defendant shot him five times in the chest and twice in the back. As a result, Rosero was rendered a paraplegic and is permanently confined to a wheelchair.

Defendant, attempting to minimize the significance of this testimony, argues that he was never convicted of the Rosero shooting. Defendant does not suggest that this evidence was inadmissible, for, certainly, prior uncharged criminal conduct is relevant in a sentencing determination. (See *People v. Johnson* (1986), 114 Ill. 2d 170, 205.) If believed, the jury may have considered that defendant's mitigation evidence was insufficient to overcome the aggravating factors.

At the time of this offense, defendant was 19 years of age and Gomez was 21. Although the defendant's prior juvenile conduct is of a less serious nature than Gomez's prior criminal conduct, we cannot say that defendant's

conduct was mitigation sufficient to preclude imposition of the death penalty.

Because we conclude that defendant's death sentence is not improperly disparate, we find that defendant was not prejudiced by prior appellate counsel's performance. On this issue, defendant has failed to satisfy the prejudice prong of *Strickland*.

## CONCLUSION

Prior counsel's inclusion of the alleged errors which underlie defendant's ineffectiveness claim would not have resulted in vacatur of defendant's death sentence. Therefore, we are unable to conclude that defendant received ineffective assistance of appellate counsel.

For the forgoing reasons, we deny post-conviction relief and affirm the judgment of the circuit court. The clerk of this court is directed to enter an order setting Tuesday, March 16, 1993, as the date on which the sentence of death entered by the circuit court shall be implemented. The defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Affirmed.*