NOTICE
Decision filed 10/12/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220670-U

NO. 5-22-0670

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 07-CF-1120 |
| | ) | |
| ROBERT E. NICHOLSON, | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in denying defendant's motion for leave to file a successive postconviction petition where the defendant failed to satisfy the cause-and-prejudice test and further failed to set forth a colorable claim of actual innocence.

¶ 2   Defendant, Robert E. Nicholson, appeals the circuit court's order denying his motion for leave to file a successive petition for postconviction relief. Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), concluded this appeal lacks merit, and on that basis, filed a motion for leave to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a memorandum of law. OSAD provided defendant notice of its motion, and in response, defendant filed a letter based solely on his *Batson* claim. Having examined OSAD's motion and memorandum, defendant's response, and reviewed the record on appeal and

1

the prior decisions of the appellate court concerning defendant's case, we conclude this appeal lacks merit. Thus, we grant OSAD's motion for leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 3                              BACKGROUND

¶ 4      On June 13, 2008, a jury found defendant guilty of first-degree murder. The evidence established that on August 1, 2007, defendant strangled his wife, Donna Nicholson, to death.[1] The circuit court sentenced him to 30 years' imprisonment followed by 3 years' mandatory supervised release. Defendant appealed from the judgment of conviction, and OSAD was appointed to represent him. On direct appeal, defendant argued that (1) the circuit court erred in failing to suppress his videotaped interrogation, where defendant was in custody during the interrogation but had not been advised of his *Miranda* rights; (2) the State failed to prove him guilty of first-degree murder beyond a reasonable doubt; (3) the trial court erred in precluding him from presenting evidence essential to his defense; and (4) as a matter of plain error, the prosecutor engaged in misconduct by eliciting testimony that suggested prior incidents of domestic violence between defendant and his wife. The Appellate Court, Fourth District, rejected the arguments and affirmed the judgment of conviction. *People v. Nicholson*, No. 4-08-0792 (Jan. 6, 2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5      In November 2010, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)). Therein, defendant claimed that (1) he was deprived of a prompt probable-cause determination after his arrest; (2) the circuit court failed to conduct a proper *voir dire* examination of prospective jurors under Illinois

---

[1]The evidence establishing defendant's guilt was well-documented in defendant's prior appeals. See *People v. Nicholson*, No. 4-08-0792 (Jan. 6, 2010) (unpublished order under Illinois Supreme Court Rule 23); *People v. Nicholson*, 2014 IL App (4th) 120761-U. As such, the evidence will only be addressed in the analysis as necessary to review the claims raised herein.

Supreme Court Rule 431(b) (eff. May 1, 2007) (codifying the four principles of *People v. Zehr*, 103 Ill. 2d 472 (1984)); (3) prosecutors committed misconduct by presenting the perjured testimony of a State's witness, who was a jailhouse informant; (4) the State failed to prove him guilty of first-degree murder beyond a reasonable doubt; (5) trial counsel was ineffective for failing to object to the lack of a prompt probable-cause hearing and for not moving to dismiss the charging instrument; and (6) direct-appeal counsel was ineffective for failing to file a petition for leave to appeal with the Illinois Supreme Court. Defendant also raised a claim of actual innocence in his *pro se* postconviction petition. He alleged that DNA testing of certain specified items at his trial had the potential to produce new evidence materially relevant to his assertion of actual innocence. He requested DNA testing of those items pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2010)).

¶ 6     The circuit court appointed postconviction counsel who filed an amended postconviction petition incorporating defendant's *pro se* petition. The State moved to dismiss the petition, and, after a hearing, the circuit court granted the State's motion and dismissed the amended petition. Defendant appealed, and OSAD was appointed to represent him.

¶ 7     On appeal defendant argued that postconviction counsel failed to provide him with reasonable assistance, where counsel failed to make any substantive amendments to his *pro se* request for DNA testing, resulting in his failure to make a *prima facie* case for such testing. The Appellate Court, Fourth District, rejected defendant's argument and affirmed the judgment of the circuit court. *People v. Nicholson*, 2014 IL App (4th) 120761-U. The court found "the blood evidence was not central to the State's case." *Id.* ¶ 49. "The State's evidence and closing arguments centered on the jailhouse informant, defendant's inconsistent statements to police officers, and defendant's motive and opportunity to commit the murder." *Id.* Therefore the court concluded,

3

"Thus, proof the blood on the shirt and shoes did not come from the victim would not alter the State's case in any significant manner and cannot be deemed materially relevant to defendant's claim of actual innocence." *Id.*

¶ 8    On December 22, 2014, defendant filed a motion requesting DNA testing. On December 31, 2014, the State moved for dismissal claiming *res judicata*. In support, the State provided a copy of *Nicholson*, 2014 IL App (4th) 120761-U, in which the appellate court addressed the DNA evidence and defendant's claim of actual innocence. The court denied defendant's motion for DNA testing and defendant appealed. OSAD was appointed to represent defendant. OSAD moved to dismiss the appeal and the appellate court granted the motion on May 31, 2016. *People v. Nicholson*, No. 4-16-0093.

¶ 9    On July 10, 2017, defendant filed another motion to allow DNA evidence. No certificate of service was included with the motion and the record contains no ruling on the motion.

¶ 10    On January 8, 2021, defendant filed a *pro se* motion for leave to file a successive postconviction petition claiming, "newly discovered evidence." The motion consisted of one sentence and failed to include any information regarding the newly discovered evidence. On April 13, 2021, the circuit court dismissed defendant's motion, noting its deficiencies. Defendant appealed, OSAD was appointed, and later moved to dismiss the appeal. On October 21, 2021, the appellate court entered an order dismissing the appeal. *People v. Nicholson*, No. 4-21-0318.

¶ 11    On June 21, 2022, defendant filed a *pro se* "motion for leave to file successive post-conviction petition." Therein, defendant alleged that his first postconviction petition was filed on November 1, 2010, and was denied on July 31, 2012. No mention was made of defendant's 2021 filing. Defendant listed his "medical problems, eye operation, hip operation, blood clotting problems, covid problems, [and] kidney operation" as "cause" for his failure to bring the claim

4

earlier. As to his claim of "prejudice" resulting from the failure to bring the claim earlier, the defendant alleged, "I have newly discovered evidence substantiated by transcript/common law record. See Exhibit [illegible]."

¶ 12    Accompanying the motion for leave was a three-page, handwritten letter from defendant, wherein he complained that (1) only one potential juror was black, the potential juror was sent home, and defendant's counsel never filed the *Batson* motion requested by defendant; (2) defendant's trial counsel knew the wrong DNA testing was performed and when the correct testing was performed, the DNA did not belong to defendant; (3) blood was transferred from his shoes to his shirt due to police officers putting the shoes on top of his shirt after he was interviewed; (4) defendant's attorney never told him about the 9-1-1 call from his wife reporting a home invasion on July 28, 2007, in which the deceased's wedding ring was stolen while defendant was at work or the second 9-1-1 call three nights later in which the deceased stated that someone broke into the house and tore it up while his wife was sleeping; (5) his wife's purse was stolen on August 1, 2007; her driver's license and debit card were recovered with a bloody t-shirt—the police tested the bloody t-shirt, but defendant's trial counsel hid the results from defendant; (6) the court ordered hair and DNA testing, but the hair testing was never performed; if the testing had been performed it would have shown that the jailhouse informant was lying when he testified that defendant and his wife smoked cocaine; (7) defendant's wife fell and suffered a seizure prior to 2007; defendant took her to the hospital, and she was diagnosed with a broken neck, which explained the broken bone found on autopsy; (8) defendant's wife did not have marks on her neck, had no dilation in her eyes, and was not strangled; and (9) defendant provided names of 11 witnesses to his counsel, but his trial counsel did not subpoena the witnesses.

¶ 13    Also attached to the motion were DNA testing data and reports from 2007, a redacted "follow up investigation" report, and affidavits from Sheila Hayes and Randy Hayes. Both affidavits were notarized on December 18, 2015. The affidavits were similar in stating that on August 1, 2007, Sheila and Randy knocked on the Nicholsons' front door, nobody answered the door, and defendant's car was not at the house at that time. Sheila's affidavit added that she "heard noise from inside the house." Randy's affidavit added that he later saw defendant that evening and defendant was "crying" and "very upset" over his wife's death. Both affidavits described the love defendant and his wife had for each other and stated neither saw any blood on defendant's clothing.

¶ 14    Defendant's petition for leave to file a successive petition was also accompanied by testimony from the trial by the officer who collected defendant's clothes. The testimony revealed there were no signs of blood on defendant's shoes, shirt, or shorts. Following pages from the defendant's brief in a prior appeal were handwritten claims of ineffective assistance of trial counsel and appellate counsel not challenging the dismissal of the only black juror under *Batson*, two pages from an appellate court brief setting forth claims of ineffective assistance of trial counsel, an unfiled motion to allow DNA testing, and a two-page unfiled "motion for review of new evidence." The latter motion alleged that the Illinois Innocence Project obtained DNA testing on samples previously described as male DNA and the testing determined the DNA was not defendant's DNA. The motion requested an order for further testing to establish a profile for CODIS. Following these documents were additional pages of prior pleadings and briefs filed in the case, as well as copies of the 9-1-1 reports from July 28, 2007, to August 1, 2007.

¶ 15    On September 20, 2022, the circuit court entered an order denying defendant leave to file a successive postconviction petition. The court found that many of defendant's claims were not supported by affidavit, the record, or other evidence as required by section 122-2 of the Post-

6

Conviction Hearing Act (725 ILCS 5/122-2 (West 2022)) and, after reviewing the record, found that many, "if not all of the Defendant's claims[,] have been litigated and re-litigated during the entire course of this proceeding." The trial court noted that defendant's claims were "merely conclusions," "the claims did not constitute newly discovered evidence," and nothing in the record caused the court to view the evidence in a different light or undermined the court's confidence in the judgment of guilt. After finding defendant failed to "set forth sufficient evidence to support a claim of actual innocence based upon newly discovered evidence," the court denied defendant's motion. Defendant appealed.

¶ 16                                                    ANALYSIS

¶ 17     Defendant's appointed counsel, OSAD, concluded there was no merit to an argument that the circuit court erred in denying leave, and on that basis, filed a motion to withdraw as counsel. In response, defendant filed a three-page, handwritten letter that focused exclusively on the alleged ineffective assistance provided by his trial counsel stemming from counsel's failure to ensure the jury selection complied with *Batson v. Kentucky*, 476 U.S. 79 (1986) (equal protection forbids the prosecution from challenging potential jurors solely because of their race, and defense can make a *prima facie* showing of purposeful racial discrimination by citing facts concerning jury selection at trial). We review this matter *de novo. People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 18     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a procedural mechanism through which a defendant may assert a substantial denial of his federal or state constitutional rights in the proceedings that resulted in defendant's conviction. *Id.* § 122-1(a); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Claims under the Act are commenced by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2022). "[T]he Act contemplates the filing of only one post-conviction petition." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456

7

(2002). Successive petitions are "highly disfavored" (*People v. Bailey*, 2017 IL 121450, ¶ 39) because of their detriment to the finality of criminal litigation and judgments. *People v. Flores*, 153 Ill. 2d 264, 274 (1992). Accordingly, the filing of a successive petition requires leave from the circuit court. 725 ILCS 5/122-1(f) (West 2022); *People v. Lusby*, 2020 IL 124046, ¶ 27.

¶ 19    In order to obtain leave of court to file a successive petition, a defendant must satisfy the cause-and-prejudice test. 725 ILCS 5/122-1(f) (West 2022). Cause is shown "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* A defendant shows prejudice "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Defendant must satisfy both prongs of this cause-and-prejudice test. *People v. Guerrero*, 2012 IL 112020, ¶ 15. Whether defendant met the test requirements is determined by the pleadings. *People v. Smith*, 2014 IL 115946, ¶ 33. The circuit court conducts a "preliminary screening" to determine whether the motion adequately alleges facts making "a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 20    Here, defendant's motion for leave to file a successive petition listed "cause" for his failure to bring his claims in his initial postconviction petition as "medical problems, eye operation, hip operation, blood clotting problems, covid problems, [and] kidney operation." The motion further alleged that defendant's "prejudice" resulting from the failure to bring the claim earlier was "newly discovered evidence substantiated by transcript/common law record."

¶ 21    As to the cause-and-prejudice test, two defects are immediately apparent. First, defendant's claim of medical problems does not establish cause where there is no indication when the medical problems occurred. Nor does a list of medical issues explain how the conditions impeded his ability to raise the claims listed herein during his initial postconviction proceeding.

¶ 22      Second, and more importantly, defendant failed to present any objective factor revealing an impediment to his ability to raise his claims during his first or second postconviction proceedings. Defendant fails to explain why he was unaware, at the time of the initial or his second postconviction proceeding, of the police officers' alleged mishandling of the evidence as he was present when the officers took his clothes. Similarly, defendant was in court when (1) the alleged lone black juror was excused from jury duty, (2) the jailhouse informant testified before the jury, (3) and his counsel failed to call any of the 11 witnesses he requested his counsel subpoena for trial. Further, while the Hayeses' affidavits were notarized on December 18, 2015, the affidavits reveal that both Sheila and Randy Hayes spoke with defendant on August 1, 2007, and informed him they had been to the house earlier in the day, when his car was not there. Sheila's affidavit further stated that she told defendant that she heard someone at the house while he was gone. We find nothing in the record that precluded defendant from bringing these claims in either his first or second postconviction petition. Cause cannot be shown. As both cause and prejudice must be shown to grant a motion for leave to file a successive postconviction petition (*Guerrero*, 2012 IL 112020, ¶ 15), defendant's failure to show cause requires dismissal of his motion.

¶ 23      As noted above, defendant also asserted an actual innocence claim. An actual innocence claim provides a second basis on which a defendant can obtain leave to file a successive petition. *People v. Edwards*, 2012 IL 111711, ¶ 24. An actual innocence claim does not require a showing of cause and prejudice (*People v. Ortiz*, 235 Ill. 2d 319, 330 (2009)); rather, defendant must provide supporting evidence that is "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. "Newly discovered evidence is evidence that was discovered after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id.*

9

"Evidence is material if it is relevant and probative of the [defendant's] innocence." *Id.*
"Noncumulative evidence adds to the information that the fact finder heard at trial." *Id.* "[T]he
conclusive character element refers to evidence that, when considered along with the trial
evidence, would probably lead to a different result" and "is the most important element of an actual
innocence claim." *Id.*

¶ 24   Here, defendant alleged that he possessed "newly discovered evidence substantiated by
transcript/common law record." We first note that, to the extent defendant relies on the record as
evidence of his innocence, it is not newly discovered evidence. As noted above, the Hayeses'
affidavits were notarized in 2015, and no explanation as to why defendant was unable to present
them in his second motion for leave to file a successive postconviction petition was provided.
However, even if considered newly discovered evidence, the evidence contained within the
affidavits was cumulative of the officer's testimony at the trial revealing no obvious blood stains
on defendant's clothing as well as defendant's testimony at the trial regarding his absence from
the house earlier in the day. We cannot find that the affidavits, when considered with the trial
evidence, were material, not cumulative, or of such conclusive character that they would probably
change the result on retrial.

¶ 25   Equally unpersuasive is defendant's claim regarding the DNA evidence from the Illinois
Innocence Project. While such evidence might be relevant to meeting the standard, defendant's
petition contained only an assertion regarding the DNA evidence with no supporting
documentation. Unsupported assertions are insufficient to advance an actual innocence claim.
*People v. West*, 187 Ill. 2d 418, 425-26 (1999). We further note that the relevance of the DNA
evidence is equally uncertain based on the prior ruling issued in *Nicholson*, 2014 IL App (4th)
120761-U, ¶ 49, which found "the blood evidence was not central to the State's case." As no other

newly discovered evidence was presented, we find defendant's asserted actual innocence claim in his third motion for leave to file a successive postconviction petition insufficient to avoid dismissal.

¶ 26                                    CONCLUSION

¶ 27    Defendant failed to show cause for his motion for leave to file a successive postconviction petition. Further, defendant's claim of actual innocence failed to establish the newly discovered evidence was material, not cumulative, and of such conclusive character that it would lead to a different result. The circuit court did not err in denying the motion for leave to file a successive postconviction petition, and no argument to the contrary would have substantial merit. As such, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 28    Motion granted; judgment affirmed.