John Bruce GRINOLS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7349.

Court of Appeals of Alaska.

Oct. 13, 2000.

602

John Bruce Grinols, in propria persona, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In 1994, John Bruce Grinols was convicted of three counts of sexually abusing a minor. This court affirmed Grinols's convictions in May 1995.[1] Several months later, Grinols filed a petition for post-conviction relief, alleging that he had received ineffective assistance of counsel from his trial attorney. The superior court denied the petition and, in August 1998, this court affirmed the superior court's decision.[2]

In January 1999, Grinols filed a petition for writ of habeas corpus in which he raised new attacks on his conviction. The superior court, relying on Civil Rule 86(m), ruled that Grinols's habeas corpus petition had to be treated as a second petition for post-conviction relief. And because AS 12.72.020(a)(6) declares that a defendant is generally entitled to file only one petition for post-conviction relief, the superior court dismissed Grinols's lawsuit.

Grinols argues that he has a constitutional right to pursue the new collateral attacks on his conviction. He contends that Civil Rule 86(m) abridges the constitutionally guaranteed right of habeas corpus. Alternatively, Grinols argues that even if his application must be deemed a second petition for post-conviction relief, he nevertheless has a constitutional right to litigate his claims in spite of AS 12.72.020(a)(6). Finally, Grinols contends that he is entitled to the assistance of counsel at public expense to aid him in this litigation.

As we explain in more detail below, all but three of Grinols's claims would be barred under the doctrine of *res judicata* that applied to habeas corpus and post-conviction relief litigation even before the enactment of Civil Rule 86(m) and AS 12.72.020(a)(6). Moreover, of Grinols's three remaining claims, one could have been raised in Grinols's underlying criminal case without filing a petition for post-conviction relief, while another falls within a legislatively-created exception to the ban on second petitions for post-conviction relief.

Thus, only one claim remains: Grinols's contention that he received ineffective assistance of counsel when he litigated his first petition for post-conviction relief. To resolve this claim, we must address the constitutionality of Civil Rule 86(m) and AS 12.72.020(a)(6). We also must address the constitutionality of AS 18.85.100(c)(1), the statute which declares that an indigent defendant is entitled to counsel at public expense to pursue a first petition for post-conviction relief, but not to pursue any successive petition.

For the reasons explained in this opinion, we uphold the constitutionality of Civil Rule 86(m), the rule which states that post-conviction relief supersedes habeas corpus as the procedural method for collaterally attacking a criminal conviction. And, with certain limited exceptions, we uphold the constitutionality of AS 12.72.020(a)(6), the statute which bars a defendant from pursuing successive petitions for post-conviction relief.

But under the due process clause of the Alaska Constitution, we must allow defendants to pursue a second petition for post-conviction relief if they allege that they received ineffective assistance of counsel when they litigated their first petition. Defendants have a right, under Alaska law, to competent legal representation when they litigate a first petition for post-conviction relief. Therefore, a defendant must be allowed to attack the result of that first post-conviction relief litigation by showing that they received incompetent representation.

Finally, we hold that indigent defendants are not entitled to counsel at public expense when they litigate a second petition for post-conviction relief. We nevertheless hold that the superior court has the authority, under the due process clause, to appoint counsel for an indigent defendant if the court concludes that a lawyer's assistance is needed for a fair and meaningful litigation of the defendant's claim.

*1. Underlying facts, and an explanation of the superior court's ruling*

As explained above, Grinols lost a direct appeal of his convictions, and he then litigat-

---

1. *See Grinols v. State,* Alaska App. Memorandum Opinion No. 3163 (May 10, 1995).

2. *See Grinols v. State,* Alaska App. Memorandum Opinion No. 3862 (August 19, 1998).

ed and lost a petition for post-conviction relief (and an ensuing appeal). Grinols then filed a petition for writ of habeas corpus.

In his habeas petition, Grinols alleged that dozens of procedural errors and denials of due process occurred at his trial, his sentencing, his appeal, his petition for hearing to the Alaska Supreme Court, his first petition for post-conviction relief, and his appeal from the denial of post-conviction relief. As part of these allegations, Grinols asserted that he received ineffective assistance from all six attorneys who represented him during the various stages of his litigation.

Relying on Alaska Civil Rule 86(m) and AS 12.72.020(a)(6), both enacted in 1995, Superior Court Judge Thomas M. Jahnke dismissed Grinols's petition. The judge ruled that, under Civil Rule 86(m), Grinols's petition for writ of habeas corpus had to be deemed a petition for post-conviction relief. Having ruled that Grinols's pleading was in fact a second petition for post-conviction relief, Judge Jahnke dismissed the petition because AS 12.72.020(a)(6) bars a defendant from filing more than one petition for post-conviction relief. Judge Jahnke also denied Grinols's request for the appointment of counsel at public expense. The judge noted that, under AS 18.85.100(c)(1), an indigent defendant's right to appointed counsel extends only to the defendant's first petition for post-conviction relief.

Alaska Civil Rule 86(m) declares that habeas corpus can not be used as a substitute for post-conviction relief. Specifically, Rule 86(m) states that the habeas corpus remedy described in Rule 86

> does not apply to any post-conviction proceeding that could be brought under Criminal Rule 35.1. The court shall treat such a [habeas corpus] complaint as an application for post-conviction relief under Criminal Rule 35.1 and, if necessary, transfer the application to the court of appropriate jurisdiction for proceedings under that rule.

Rule 86(m) codifies the decision reached by this court in *Wood v. Endell.*[3] In *Wood,* a prisoner filed a petition for habeas corpus in which he attacked his underlying conviction. Construing Criminal Rule 35.1, we held that Alaska's post-conviction relief procedures were intended to supersede the habeas corpus remedy, and we therefore ruled that a habeas petition attacking a criminal conviction should normally be deemed a petition for post-conviction relief.[4]

In Alaska, a defendant's right to seek post-conviction relief is governed by AS 12.72. One of the statutes contained in this chapter, AS 12.72.020(a)(6), declares that (with certain limited exceptions) a defendant may pursue only one petition for post-conviction relief. Grinols has already litigated a previous petition for post-conviction relief. Thus, unless one or more of Grinols's claims falls under a constitutional or statutory exception to the normal ban on successive petitions for post-conviction relief, all of Grinols's claims are barred.

2. *The limited scope of the constitutional problem presented in Grinols's case: Most of Grinols's claims would have been barred under prior law. Only a few of Grinols's claims are affected by the changes enacted by the Alaska Legislature and the Alaska Supreme Court in 1995.*

Grinols's case requires us to clarify a defendant's right to collaterally attack a criminal judgement. In particular, Grinols asks us to examine the constitutionality of certain changes that the Alaska Supreme Court and the Alaska Legislature made to this area of the law in 1995: the court's enactment of Civil Rule 86(m) and the legislature's enactment of AS 12.72 (and its concomitant amendment of Criminal Rule 35.1). But before we begin our analysis of these 1995 changes, it is important to point out that most of Grinols's present claims would have been barred under Alaska law as it existed before 1995.

*(a) Alaska law between 1968 and 1995*

Society has a substantial interest in making sure that criminal litigation eventually

---

**3.** 702 P.2d 248, 249 n. 1 (Alaska App.1985).

**4.** *See id.*

reaches an end. All persons involved in the litigation—defendants, victims, families and friends, investigative agencies, as well as the public at large—have a right to expect that criminal cases will be finally resolved at some point. If prisoners are allowed to assert claims long after their trials, society runs the risk that re-trials may be ordered years after the event, when witnesses may no longer be available or their memories of the pertinent occurrences have been lost or diminished. In addition, piecemeal litigation of successive and often fruitless post-conviction claims poses a significant cost to the courts and the other components of the criminal justice system. As our supreme court recognized in *Merrill v. State,*

> finality may be a crucial element [in the] effectiveness [of the criminal law]. A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of [administering] justice that cannot but war with the effectiveness of the [law's] underlying substantive commands. Furthermore, ... an endless reopening of convictions, with its continuing underlying implication that perhaps the defendant can escape from corrective sanctions after all, [is potentially inconsistent] with the aim of rehabilitating offenders.

457 P.2d 231, 236 (Alaska 1969).[5]

For these reasons, the Alaska Supreme Court restricted a defendant's ability to pursue successive petitions for post-conviction relief. This restriction took the form of a rule requiring joinder of all of a defendant's post-conviction claims in a single litigation. This compulsory joinder rule was originally enacted in 1968 as Criminal Rule 35(i); it was later recodified as Criminal Rule 35.1(h).[6]

Under this rule, defendants who pursued post-conviction relief were required to present all of their claims in one combined litigation. All of the petitioner's claims for post-conviction relief had to be "raised in [the petitioner's] original, supplemental[,] or amended application". Once a defendant's first petition for post-conviction relief was adjudicated, any past or potential post-conviction claim became *res judicata*. That is, the defendant was thereafter barred from seeking post-conviction relief on the basis of (a) any claim already decided against the defendant and (b) any claim that could have been raised in the first petition. To pursue a second petition for post-conviction relief, the defendant had to establish good reason for failing to raise their post-conviction claim in the prior petition.[7]

For instance, in *Merrill,* the defendant filed a multi-claim petition for post-conviction relief. After extensive litigation, the superior court denied the petition. One month later, Merrill filed another petition, this one asserting that his trial jury had been selected in a discriminatory fashion. The superior court denied this second petition without holding a hearing to investigate Merrill's allegation.[8] On appeal, the supreme court ruled that the superior court had acted properly: this second petition was subject to summary dismissal because Merrill did not offer

5. Quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harvard Law Review 441, 451–52 (1963).

6. The first version of the restriction, Criminal Rule 35(i), was enacted in 1968. *See Merrill,* 457 P.2d at 237–38. Twenty years later, in 1987, the supreme court recodified the rules governing post-conviction relief, placing them in a separate Criminal Rule 35.1. The restriction on successive petitions (which remained substantively the same) was renumbered as Rule 35.1(h). *See* Supreme Court Order No. 822, effective August 1, 1987.

7. Both former Criminal Rule 35(i) and former Criminal Rule 35.1(h) were worded identically:

*Waiver of or Failure to Assert Claims.* All grounds for relief available to an applicant under this rule must be raised in his original, supplemental[,] or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily[,] and intelligently waived in the proceeding that resulted in the conviction or sentence[,] or in any other proceeding the applicant has taken to secure relief[,] may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

8. *See Merrill,* 457 P.2d at 233.

a valid reason for failing to raise the jury claim in his previous petition.[9]

### (b) The 1995 changes in the law

The law on this point remained unchanged until 1995, when both the supreme court and the legislature revised the rules governing post-conviction relief.

In January 1995, the supreme court amended Civil Rule 86—Alaska's habeas corpus rule—by adding sections (m) and (n).[10] As explained above, section (m) of Civil Rule 86 declares that habeas corpus is not available in situations where a post-conviction proceeding could be brought under Criminal Rule 35.1. In such cases, courts are directed to treat any habeas corpus complaint as an application for post-conviction relief. Section (n) of the Rule 86 clarifies that habeas corpus is not intended to serve as "a substitute for ... any remedy incident to the proceedings in the trial court, or direct review of a sentence or conviction." Section (m) was based on this court's decision in *Wood v. Endell,* while section (n) was intended as a counterpart to Criminal Rule 35.1(b).[11]

Later that same year, the legislature substantially amended post-conviction relief procedures by re-writing Criminal Rule 35.1 and by enacting AS 12.72.[12] The new version of Criminal Rule 35 .1 contains no provision like former section (h), the rule requiring joinder of claims. In fact, the legislature expressly repealed Rule 35.1(h).[13]

However, the legislature codified various new restrictions on post-conviction relief in AS 12.72.020. Subsection 020(a)(1) prohibits a defendant from pursuing a claim for post-conviction relief if the claim "is based on the admission or exclusion of evidence at trial". Subsection (a)(2) prohibits a defendant from pursuing a claim for post-conviction relief if the claim "was, or could have been ..., raised [on] direct appeal". Subsections (a)(3)

and (a)(4) place time limits on petitions for post-conviction relief. (Depending on the circumstances, the petition must be filed within either one or two years of the date of the judgement being attacked, or within one year of an ensuing decision on appeal.) Subsection (a)(5) prohibits a defendant from pursuing a claim that was either "decided on its merits or on procedural grounds in any previous proceeding". And finally, subsection (a)(6) prohibits a defendant from pursuing a claim for post-conviction relief if the defendant "has ... filed a previous application for post-conviction relief".

AS 12.72.020(a)(6) performs a function analogous to the rule of compulsory joinder of claims contained in former Criminal Rule 35.1(h), but the statute reaches farther than the old rule. Under former Rule 35.1(h), a petitioner could pursue a second petition for post-conviction relief if the defendant demonstrated that the new claim could not have been raised earlier. AS 12.72.020(a)(6) contains no such exception. Under AS 12.72.020(a)(6), defendants are no longer permitted to file a second petition for post-conviction relief, even if they can show that they were unable to raise their claim in their first petition.

### (c) Application of AS 12.72.020(a)(6) to Grinols's case: the limited effect of this statute

■ AS 12.72.020(a)(6) has only a small effect on Grinols's case because almost all of Grinols's claims would have been barred under the old rule of compulsory joinder contained in former Criminal Rule 35.1(h). That is, almost all of Grinols's claims are barred by the doctrine of *res judicata:* they were litigated in his direct appeal, or they were raised in his first petition for post-conviction relief, or they could have been raised in that first petition.[14] Grinols raises only three claims that conceivably escape this bar.

---

**9.** *See id.* at 239.

**10.** *See* Supreme Court Order No. 1186, issued January 23, 1995 (effective July 15th).

**11.** Criminal Rule 35.1(b) declares that a petition for post-conviction relief "is not a substitute for[,] nor does it affect[,] any remedy incident to

the proceedings in the trial court, or direct review of the sentence or conviction."

**12.** *See generally* SLA 1995, ch. 79.

**13.** *See* SLA 1995, ch. 79, § 39.

**14.** The following claims raised in Grinols's current petition would be barred under Alaska's pre

■ The first claim that may not be barred by the doctrine of *res judicata* is Grinols's assertion that his probation has been illegally extended until the year 2002. This claim apparently arises from the fact that Grinols was earlier released on probation and then was sent back to prison because of a probation violation. Grinols disputes the Department of Corrections's re-calculation of his new release date.

This is conceivably a new claim, depending on when the re-calculation occurred, and when Grinols learned of it. If it is a new claim, AS 12.72.020(a)(6) does not bar it. Although section 020(a)(6) generally prohibits successive petitions for post-conviction relief, the legislature created an exception for claims relating to administrative decisions of the Department of Corrections or the Board of Parole. Under AS 12.72.020(c), Grinols is entitled to attack the Department of Corrections's calculation of his release date if this claim could not have been raised in his prior petition for post-conviction relief. Thus, if Grinols's claim is indeed a newly-arisen claim, it is not barred.

Indeed, Grinols points this out in his brief. The State does not dispute that an exception exists for claims relating to administrative decisions of the Department of Corrections. However, the State asserts that Grinols's claim was deficient for other reasons. According to the State, Grinols failed to identify the precise decision that he was attacking, and he further failed to explain why he believed the Department's calculation was wrong. Moreover, the State argues that Grinols failed to identify the date of the Department's action. The State points out that, even though section 020(a)(6) may not prohibit Grinols from attacking the Department's calculation of his release date, Grinols's claim may be barred by section 020(a)(4), the statute of limitations. Under this section, Grinols had one year in which to file his attack on the Department's decision.

The State's arguments may ultimately be persuasive, but Judge Jahnke did not address these arguments. Instead, he relied solely on section (a)(6) when he dismissed Grinols's petition. The judge did not indicate that Grinols's release-date claim was being dismissed for different reasons, nor did he address any of the State's rationales for dismissing this claim. Accordingly, this aspect of Judge Jahnke's ruling must be reversed, and the superior court must reconsider this particular claim.

■ The second claim that may not be barred by the doctrine of *res judicata* is Grinols's assertion that the superior court and the probation officer improperly "changed the wording [of his] judgment after it had been entered". By this, Grinols means that his probation officer has allegedly amended the conditions of his probation be-

---

1995 law because they were raised on direct appeal or because they either were raised or could have been raised in Grinols's first petition for post-conviction relief:

1) the claim that his conviction was obtained "by the unconstitutional use of a statute to interfere with a pending marriage";

2) the claim that his conviction was obtained by the government's failure to disclose exculpatory evidence. According to Grinols's petition, all of the assertedly exculpatory evidence was known to Grinols at his trial or during the litigation of his first petition for post-conviction relief;

3) the claim that his conviction was obtained through the denial of Grinols's right to confront the evidence against him;

4) the claim that he was denied his right to speedy trial under Criminal Rule 45;

5) the claim that his conviction was obtained in contravention of the Treaties of 1818 and 1846 between the United States and the British Empire (the predecessor in interest to Canada), resolving the borders of the Oregon Territory;

6) the claim that his conviction was obtained in violation of his right against self-incrimination;

7) the claim that the sentencing judge acted illegally when he ordered Grinols to participate in counseling and when he prohibited Grinols from having contact with females under the age of 16;

8) the claim that both the grand jury and petit jury were unconstitutionally selected and impaneled; and

9) the claim that his conviction was obtained through various violations of his rights to due process and equal protection, and through the abuse of power, judicial discretion, and court process.

In addition, Grinols raises a new claim on appeal: that the judge who presided over his trial was unfair. This claim is not preserved because it was never presented to the superior court.

yond the scope intended by the sentencing judge, or beyond the scope allowed by the judge's oral sentencing remarks. Again, this claim may conceivably be a new claim, depending on when the allegedly improper probation conditions were imposed, and when Grinols learned of them.

But if it is a new claim, Grinols did not have to pursue it in a petition for post-conviction relief. Grinols can attack his probation conditions directly, by filing a motion in his original criminal case. If the superior court rejects his arguments, he has a right of appeal.[15] In other words, instead of rejecting Grinols's claim under AS 12.72.020(a)(6), the superior court should have treated Grinols's pleading as a motion to set aside the challenged condition(s) of probation. Thus, this second aspect of Judge Jahnke's ruling must also be reversed, and the superior court must reconsider Grinols's claim.[16]

■ The third and final claim that may not be barred by the doctrine of *res judicata* is Grinols's assertion that he was denied effective assistance of counsel. Grinols contends that he received ineffective assistance from all six of the attorneys who represented him since his original criminal trial. With respect to the first five attorneys, Grinols could have raised his claims before; even under former law, he would be barred from raising these claims. However, Grinols's current petition for post-conviction relief is arguably his first opportunity to attack the competency of his sixth attorney—the one who represented him during the litigation of his first petition for post-conviction relief and during the ensuing appeal.

This claim is not so easily disposed of. Indeed, almost all of what follows is addressed to Grinols's claim of ineffective assistance of counsel.

3. *Grinols's arguments based on the "suspension" clauses of the federal and state constitutions*

■ Both the United States Constitution and the Alaska Constitution contain provisions that forbid the government from suspending the writ of habeas corpus except in times of rebellion or invasion.[17] Grinols argues that the combination of Civil Rule 86(m) and AS 12.72.020(a) effectively constitutes a suspension of habeas corpus.

■ Article I, Section 9 of the federal Constitution does not prohibit the Alaska Legislature from restricting the habeas corpus remedy. As we recently explained in *Flanigan v. State*[18], this provision of the federal Constitution only limits the power of the United States Congress.[19] It does not limit the power of the states.

■ We also reject Grinols's argument that Article I, Section 13 of the Alaska Constitution guarantees him the right to attack his criminal conviction. Grinols has misconstrued the scope of the remedy guaranteed by this provision of Alaska law. As we explained in *Flanigan*, Article I, Section 13 of the Alaska Constitution guarantees the writ of habeas corpus as it existed at common law.[20] At common law, the writ of habeas

15. *See, e.g., Reyes v. State*, 978 P.2d 635, 639–641 (Alaska App.1999), and *Christensen v. State*, 844 P.2d 557, 557–58 (Alaska App.1993) (both appeals involving challenges to conditions of probation that were added or amended after the initial pronouncement of sentence, making the defendants' sentences more onerous).

16. Conceivably, Grinols is raising this claim in a post-conviction relief action because he previously litigated the issue to the superior court, lost, and then failed to appeal. If so, his claim is barred by AS 12.72.020(a)(2) and/or the rule of *Higgins v. Briggs*, 876 P.2d 539, 543 (Alaska App.1994)—the rule that a defendant who inexcusably fails to appeal can not thereafter raise the issue in a petition for post-conviction relief (arguing that collateral attack must be allowed

since the right to appeal has expired). If these doctrines are pertinent to the facts of Grinols's case, the superior court can address this issue on remand.

17. *See* Article I, Section 9 of the United States Constitution and Article I, Section 13 of the Alaska Constitution.

18. 3 P.3d 372 (Alaska App.2000).

19. *See id.* at 374 (main opinion) and at 377 (concurring opinion). *See also Gasquet v. Lapeyre*, 242 U.S. 367, 369, 37 S.Ct. 165, 166, 61 L.Ed. 367 (1917).

20. *See id.*, 3 P.3d at 376 (main opinion) and at 378–79, 381 (concurring opinion).

corpus could not be used as a means of collaterally attacking a criminal judgement, except to attack the jurisdiction of the court that issued the judgement.[21]

Grinols does not attack the jurisdiction of the superior court to entertain the criminal prosecution against him. Instead, he asserts that his conviction resulted from unfairness in the trial process. Article I, Section 13 of our state constitution does not guarantee the right to bring this type of collateral attack on a criminal conviction.

In a related argument, Grinols asserts that the habeas corpus chapter of the Alaska Statutes—AS 12.75—grants him the right to collaterally attack his conviction. But the habeas corpus remedy granted by AS 12.75 is the same limited remedy guaranteed by Article I, Section 13 of the state constitution. The limited scope of this remedy—in particular, the fact that a writ of habeas corpus can not be used to collaterally attack a criminal conviction—is expressly codified in AS 12.75.020 [22] and 12.75.110 [23].

Indeed, as we explain in the next section, the limited scope of the common-law writ of habeas corpus is the primary reason why Alaska and her sibling states have enacted statutes and rules giving prisoners the right to seek post-conviction relief.

### 4. Grinols has no federal due process right to pursue post-conviction relief.

### (a) The development of post-conviction relief in the states: the federal Habeas Corpus Act, and the Supreme Court's decision in Case v. Nebraska.

The history of post-conviction relief (in its modern form) begins in 1867. In that year, Congress enacted the federal Habeas Corpus Act. This act granted any federal or state prisoner the right to collaterally attack a criminal conviction on the ground that it was obtained in violation of either the constitution or the laws of the United States.[24]

As just explained, the common-law writ of habeas corpus allowed a prisoner to attack a criminal judgement on very narrow grounds—lack of jurisdiction. But under the Habeas Corpus Act, a state prisoner might attack a criminal conviction by alleging a violation of any right guaranteed by federal law. In the 1950s and 1960s, the United States Supreme Court issued a series of decisions that expanded the procedural rights guaranteed to all criminal defendants by the federal Constitution.[25] As a result, state

21. *See id.*

22. "A person properly imprisoned ... by virtue of a legal judgment [issued by] a competent tribunal [having] civil or criminal jurisdiction ... shall not be allowed to prosecute the writ."

23. "No court or judge, on the return of a writ of habeas corpus, may inquire into the legality or justice of any order, judgment, or [court] process [produced as justification for the petitioner's imprisonment or detention]."

24. *See* Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* (1984), § 27.2(b), Vol. 3, pp. 292–96. *See also United States v. Hayman*, 342 U.S. 205, 210–11, 72 S.Ct. 263, 268, 96 L.Ed. 232 (1952); *Johnson v. Zerbst*, 304 U.S. 458, 465–67, 58 S.Ct. 1019, 1023–24, 82 L.Ed. 1461 (1938).

25. As an indication of the breadth of the change worked by the Supreme Court during these years, consider the following excerpt from Professor G. Kenneth Reiblich's *Summary of the October 1964 Term*, written as a preface to Volume 85 of the Supreme Court Reporter (85 S.Ct., introductory pages 137–38):

[T]he Court: (1) for the first time ruled clearly that the right of confrontation protected by the Sixth Amendment ... is incorporated into the Fourteenth Amendment's due process protections against state action, ... (2) ruled that the Fifth Amendment's self-incrimination privilege, ... part of the Fourteenth Amendment's protection against state action, carries with it the same standards as are applicable in the federal courts ...; (3) condemned Connecticut's anti-contraceptive statute as violative of the right to marital privacy, in support of which [ruling] no less than six amendments were cited by the several opinions ...; [and] (4) held that televising of a notorious criminal trial violates due process of law....

Despite Mr. Justice Harlan's protests to the contrary (at times joined by Justices Clark, Stewart and White)[,] the Court has continued its process of incorporation of Bill of Rights guarantees into Fourteenth Amendment due process to where the list now includes: (1) the basic freedoms of the First Amendment (and, under *Griswold v. Connecticut* ..., unenumerated basic liberties); (2) the Fourth Amendment's unreasonable search and seizure provisions with its accompanying exclusion of illegally seized evidence; (3) the Fifth

prisoners began to resort frequently to the federal Habeas Corpus Act. This posed significant problems to the administration of the criminal justice system and to the relationship between the federal and state governments. As the Supreme Court of Tennessee explained in *House v. State*[26],

> At that time [*i.e.*, in the 1950s and early 1960s], the only means of ... collateral [attack] or post-conviction review in Tennessee, as well as most other states, was habeas corpus, which was and still is ... narrow in scope, and [which] allows for relief only when the judgment is facially void or the petitioner's term of imprisonment has expired.... [S]tate court defendants [were left] without redress for alleged constitutional errors in many cases.... Consequently, state prisoners sought relief in federal courts via the federal habeas corpus procedure.
>
> ...
>
> The expansion of federal constitutional protection and federal habeas corpus review, combined with the restrictive scope of state habeas corpus and other state collateral procedures[,] resulted in two problems. First, federal courts were called upon to review constitutional claims not considered by state courts. This called into question the finality of state criminal judgments, and in turn, caused tension between the state and the federal judiciaries. Second, federal courts were inundated and overburdened by the influx of habeas petitions filed by state prisoners.
>
> To alleviate those problems, in *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), the Supreme Court

recommended that [the] states enact statutory post-conviction procedures to supplement habeas corpus remedies and thereby provide state prisoners an opportunity to litigate allegations of federal constitutional errors in state courts.

*House*, 911 S.W.2d at 708–09 (citations omitted).

The United States Supreme Court granted certiorari in *Case v. Nebraska* to resolve the issue of whether the due process clause of the Fourteenth Amendment "requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees."[27] When the court granted certiorari in *Case* (*i.e.*, in early 1965[28]), a handful of states had enacted post-conviction relief statutes, and another handful (including Alaska) had adopted post-conviction relief procedures by court rule.[29] In addition, the National Conference of Commissioners on Uniform State Laws had promulgated a Uniform Post–Conviction Procedure Act.[30] But the great majority of states lacked a system of post-conviction relief designed for the purpose of vindicating a prisoner's constitutional rights.[31]

Doubtless, when the Supreme Court granted certiorari in *Case*, the Court anticipated that it might formulate minimum standards for post-conviction relief procedures in the states. But while the Supreme Court was considering *Case*, Nebraska enacted a post-conviction relief procedure, thus mooting the issue.[32]

Despite the mootness of the controversy, two members of the Court (Justices Clark

---

Amendment's self-incrimination and eminent domain protections (but not including yet the indictment by grand jury or double-jeopardy provisions); (4) the Sixth Amendment's rights to speedy and public trial, by an impartial jury, notice, confrontation, and assistance of counsel; (5) the Eighth Amendment's protection against cruel and unusual punishment (and possibly, although not clearly, the right to bail); and (6) again under *Griswold, supra,* radiations from the Ninth Amendment.

**26.** 911 S.W.2d 705 (Tenn.1995).

**27.** *Case v. Nebraska,* 381 U.S. at 337, 85 S.Ct. at 1487.

**28.** *See* order granting certiorari, 379 U.S. 958, 85 S.Ct. 672, 13 L.Ed.2d 554.

**29.** *See Case,* 381 U.S. at 338 & n. 3, 85 S.Ct. at 1488 & n. 3 (concurring opinion of Justice Clark).

**30.** *See* American Bar Association Project on Minimum Standards for Criminal Justice, "Standards Relating to Post–Conviction Remedies" (Tentative Draft, January 1967), p. 2.

**31.** *See id.*

**32.** *See id.*

and Brennan) wrote concurring opinions in which they suggested that, because of due process concerns, all states should enact some form of post-conviction relief.[33] There was significant response to this call. In 1967, the American Bar Association promulgated its Standards Relating to Post Conviction Relief. (*See* footnote 30, *supra*.) In addition, many state legislatures enacted post-conviction relief remedies.[34]

> *(b) The Supreme Court's subsequent rejection of constitutionally mandated post-conviction relief: the decisions in Pennsylvania v. Finley and Coleman v. Thompson.*

In retrospect, Justice Clark's and Justice Brennan's concurring opinions in *Case v. Nebraska* can be seen as the high-water mark of the notion that the federal due process clause requires states to offer post-conviction relief to criminal defendants. Eleven years after *Case*, the Supreme Court decided *United States v. MacCollom*.[35] *MacCollom* presented the issue of whether an indigent applying for federal post-conviction relief is constitutionally entitled to a transcript at public expense. In a plurality opinion joined by three other members of the Court, Justice Rehnquist declared that "the Due Process Clause of the Fifth Amendment . . . certainly does not establish any right to collaterally attack a final judgment of conviction." [36]

After another eleven years, Justice Rehnquist garnered a fifth vote for his position. In *Pennsylvania v. Finley*, the Supreme Court rejected the argument that states are required to provide counsel at public expense to criminal defendants seeking post-conviction relief.[37] Indeed, the Court concluded that states are not obliged to offer post-conviction relief in the first place. The Court declared:

Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, *cf. United States v. MacCollom*, and when they do so, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.

*Finley*, 481 U.S. at 556–57, 107 S.Ct. at 1994 (citations omitted).

Grinols's case does not raise precisely the same issues presented in *Pennsylvania v. Finley*. *Finley* dealt with a defendant who was seeking to pursue a first petition for post-conviction relief, while Grinols is attempting to pursue a second petition. But given the Supreme Court's decision in *Finley* that there is no federal constitutional right to a *first* petition for post-conviction relief, it seems obvious that Grinols has no federal right to pursue a second petition for post-conviction relief.

> *(c) The issue of "layered" claims of ineffective assistance of counsel under federal constitutional law*

*Finley* declared that the federal Constitution does not require the states to offer post-conviction relief. *Finley* also declared that, even if a state chooses to offer post-conviction relief, there is no right to counsel in such proceedings. That is, a state need not provide legal counsel to indigent defendants seeking post-conviction relief.

■ Four years after *Finley*, the Supreme Court pursued its reasoning to the next step. In *Coleman v. Thompson*[38], the Court held

---

33. *See id.*, 381 U.S. at 339–340, 85 S.Ct. at 1488–89 (Justice Clark, concurring); 381 U.S. at 344–47, 85 S.Ct. at 1491–93 (Justice Brennan, concurring).

34. *See, e.g., House v. State*, 911 S.W.2d at 709–710.

35. 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976).

36. *MacCollom*, 426 U.S. at 323, 96 S.Ct. at 2090.

37. 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987).

38. 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

that a defendant can not claim that they were deprived of the effective assistance of counsel in post-conviction relief proceedings—for "[when] there is no constitutional right to counsel[,] there can be no deprivation of effective assistance." [39] Thus, even when state law guarantees counsel to defendants seeking post-conviction relief, it does not matter (for federal constitutional law purposes) if the defendant's attorney is incompetent.

The decision in *Coleman* would seem to shut the door on Grinols's claim that he is entitled to relief because his post-conviction relief attorney was ineffective. But this issue demands fuller attention because, in *Coleman*, the Supreme Court hinted that it might consider making a limited exception for situations where state law requires defendants to pursue post-conviction relief if they wish to attack the competence of their trial attorney. [40]

■ Although the Supreme Court did not go into a full explanation of why this exception might be warranted, the rationale appears to be this: The federal Constitution guarantees the effective assistance of counsel on direct appeal. If state law allows a defendant to attack the competence of their trial attorney on direct appeal, then the defendant is entitled to the assistance of a competent lawyer when pursuing this attack. But many states—including Alaska [41]—generally forbid a defendant from raising ineffective assistance of counsel claims on direct appeal. Instead, Alaska and these other states require a defendant to pursue post-conviction relief litigation if they want to attack the competence of their trial attorney. *Coleman* holds that there is no federal right to the effective

assistance of counsel in post-conviction relief litigation. Thus, state procedural law effectively determines whether a defendant is entitled to competent legal assistance when they attack the performance of their trial attorney.

Grinols's case presents the issue that the Supreme Court raised but declined to address in *Coleman*. As explained above, under Alaska law, a defendant who alleges that their trial counsel was ineffective must normally pursue this claim in a petition for post-conviction relief. In Grinols's first petition for post-conviction relief, he did pursue such a claim: he argued that he had received ineffective assistance from the attorney who represented him at trial. Now, in his second petition for post-conviction relief, Grinols asserts (among many other things) that he received ineffective assistance of counsel from his post-conviction relief attorney—the attorney whose job it was to establish the incompetence of Grinols's trial counsel.

In the decade since *Coleman* was decided, the Supreme Court has not revisited this potential exception to the *Finley–Coleman* rule. However, several federal circuits have confronted this issue, and they have all concluded that there is no exception. That is, these circuits have all held that a defendant has no due process right to the effective assistance of counsel in post-conviction relief proceedings, even when that post-conviction relief proceeding is the defendant's first opportunity to attack the competency of their trial attorney. [42] We particularly note the series of Ninth Circuit cases on this issue, all of them rejecting the purported exception to *Finley*. [43]

---

**39.** *Coleman*, 501 U.S. at 752, 111 S.Ct. at 2566.

**40.** *See Coleman*, 501 U.S. at 755, 111 S.Ct. at 2567–68.

**41.** *See Barry v. State*, 675 P.2d 1292, 1295–96 (Alaska App.1984); *see also* Criminal Rule 11(h)(3) (a defendant seeking to withdraw a guilty plea after sentencing, based on a claim of ineffective assistance of counsel, must pursue this claim as a petition for post-conviction relief under AS 12.72).

**42.** . *See Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir.1997), *cert. denied* 522 U.S. 1100, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998); *Hill v. Jones*,

81 F.3d 1015, 1024–26 (11th Cir.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997); *Nolan v. Armontrout*, 973 F.2d 615, 616–17 (8th Cir.1992).

**43.** *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir.1998), *cert. denied*, 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999); *Nevius v. Sumner*, 105 F.3d 453, 459–460 (9th Cir.1996), *cert. denied*, 527 U.S. 1006, 119 S.Ct. 2344, 144 L.Ed.2d 241 (1999); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir.1996), *Bonin v. Calderon*, 77 F.3d 1155, 1159–60 (9th Cir.1996), *cert. denied*, 516 U.S. 1143, 116 S.Ct. 980, 133 L.Ed.2d 899 (1996).

■ Based on our review of the federal cases, we conclude that the due process clause of the federal Constitution does not guarantee Grinols the right to litigate a second petition for post-conviction relief, even when that second petition includes a "layered" claim of ineffective assistance of counsel.

### (d) Summary of federal constitutional law in this area

The federal Constitution does not guarantee a right to post-conviction relief; the states need not provide such a remedy to criminal defendants. If a state offers post-conviction relief, the state need not provide counsel to indigent defendants pursuing this remedy. And if the state does provide counsel, this counsel need not be competent, so a defendant has no federal constitutional right to attack the performance of their post-conviction relief attorney.

■ Accordingly, we hold that AS 12.72.020(a)(6)—the statute that generally limits prisoners to one petition for post-conviction relief—does not violate the due process clause of the federal Constitution.

### 5. Grinols's right to pursue a second petition for post-conviction relief under Alaska law

Although the federal Constitution does not require the states to offer post-conviction relief to criminal defendants, Alaska does offer such a remedy. AS 12.72 grants defendants the right to pursue post-conviction relief. But, in general, this chapter of the statutes does not allow a second petition for post-conviction relief.

Grinols has already pursued his one allotted petition for post-conviction relief, and AS 12.72.020(a)(6) now bars him from pursuing another. The question is whether the Alaska Constitution guarantees Grinols the right to pursue a second petition. In other words, does our state constitution prohibit the legislature from limiting a defendant to one petition for post-conviction relief?

### (a) The doctrine of res judicata

As explained above, the Alaska Supreme Court acted in 1968 to place a limit on successive petitions for post-conviction relief. The court promulgated Criminal Rule 35(i), later renumbered as Criminal Rule 35.1(h), which required defendants to bring all of their post-conviction claims at the same time. A defendant who wished to pursue a second petition for post-conviction relief had to prove that the claim(s) contained in the second petition could not have been presented in the defendant's first petition.

Alaska took this rule of compulsory joinder from Section 8 of the 1966 version of the Uniform Post Conviction Procedures Act.[44] As described in Section 2(a) of this opinion, the Alaska Supreme Court applied the compulsory joinder rule in *Merrill* and upheld the superior court's refusal to consider a defendant's new post-conviction claims. However, the constitutionality of the compulsory joinder rule was not expressly attacked in *Merrill*, and no other Alaska decision since that time has directly addressed the constitutionality of this limitation on successive petitions for post-conviction relief. We note that in *Thompson v. State*, two members of the supreme court (Justice Rabinowitz, joined by Justice Erwin) expressed doubt concerning "the constitutionality, under either the federal or Alaska Constitutions, of the [compulsory joinder] requirement of Criminal Rule 35(i)".[45] However, these two justices did not elaborate their concerns.

Although Alaska courts have not directly addressed the constitutionality of the compulsory joinder rule, case law from this state and other states indicates that this form of *res judicata* is lawful. In *Brown v. State*[46], this court decided a closely related issue: we held that the doctrine of *res judicata* applied to post-conviction relief actions, and we specifically held that a defendant is barred from litigating a claim that has already been decided on direct appeal. Later, in *Higgins v.*

---

**44.** See *Merrill v. State*, 457 P.2d 231, 237 (Alaska 1969). A similar provision is found in § 12(b)(1) of the current (1980) version of the Uniform Act.

**45.** 496 P.2d 651, 657 (Alaska 1972).

**46.** 803 P.2d 887, 888–89 (Alaska App.1990).

*Briggs,* we held that "a prisoner who inexcusably fails to appeal can not thereafter take advantage of his own neglect to justify a collateral attack on his conviction or sentence (by arguing that the requested collateral attack must be allowed since the right to appeal has expired)."[47]

Courts from most other states hold, not only that *res judicata* bars defendants from re-litigating issues that have been previously decided, but also that this same doctrine bars defendants from re-litigating issues that *could have been raised* in a prior appeal.[48] The United States Supreme Court has said the same thing.[49]

 We agree with these other jurisdictions that, generally speaking, there is no fundamental unfairness in requiring defendants to raise all of their post-conviction claims in a single proceeding—and in barring defendants from filing later claims unless they demonstrate that there is a good reason why they could not raise those claims in earlier litigation. We therefore hold that, to the extent AS 12.72.020(a)(6) bars a defendant from raising a post-conviction relief claim that was raised or could have been raised on direct appeal or in prior post-conviction relief litigation, this statute is consistent with the Alaska Constitution's guarantee of due process of law.

Although we conclude that the doctrine of *res judicata* applies to post-conviction relief litigation, we acknowledge the possibility that, under particular circumstances, strict application of *res judicata* might perpetuate manifest injustice and thus violate the guarantee of due process. The United States Supreme Court has declared that, despite the fairly strict limitations on state prisoners' ability to seek federal habeas corpus relief, federal courts nevertheless retain the power to intervene to prevent clear injustice. Even if a defendant forfeits a claim by failing to follow state procedural rules, review of the defendant's claim would still be permitted (if not mandated) if the defendant demonstrated that failure to consider the claim would "result in a fundamental miscarriage of justice"[50]—as, for example, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent".[51]

It would seem that the due process clause of the Alaska Constitution requires no less. But the facts of Grinols's case do not require us to resolve that issue. Of the many claims that Grinols either raised before or could have raised before, none involves a potential fundamental miscarriage of justice. We therefore conclude that all of Grinols's claims listed in footnote 14 (that is, all but the three claims singled out in the main text of this opinion) are barred by *res judicata.*

*(b) AS 12.72.020(a)(6)'s bar on successive petitions, and the exceptions required by the due process clause of the Alaska Constitution*

We have concluded that the legislature may lawfully prohibit a defendant from pur-

---

**47.** 876 P.2d 539, 543 (Alaska App.1994).

**48.** *See,* for example, *People v. Winsett,* 153 Ill.2d 335, 180 Ill.Dec. 109, 606 N.E.2d 1186, 1193 (1993), *cert. denied,* 510 U.S. 831, 114 S.Ct. 102, 126 L.Ed.2d 68 (1993); *Baird v. State,* 688 N.E.2d 911, 915 (Ind.1998), *cert. denied,* 525 U.S. 849, 119 S.Ct. 122, 142 L.Ed.2d 99 (1998); *In the Matter of Novaock,* 572 N.W.2d 840, 842 (S.D.1998); *Evans v. State,* 892 P.2d 796, 797 (Wyo.1995); *Retherford v. State,* 749 So.2d 269, 273 (Miss.App.1999); *Patton v. State,* 989 P.2d 983, 985–86 (Okla.Crim.App.1999), *cert. denied,* 528 U.S. 939, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999); *State v. Scudder,* 131 Ohio App.3d 470, 722 N.E.2d 1054, 1057 (1998); *Billings v. Maass,* 86 Or.App. 66, 738 P.2d 222, 223 (1987). *But cf. James L. v. Commissioner of Correction,* 245 Conn. 132, 712 A.2d 947, 953 n. 11 (1998); *Brooks v. Board of Pardons and Paroles,* 644 So.2d 481, 482 (Ala.Crim.App.1994) (holding that the doctrine of *res judicata* does not strictly apply to habeas corpus proceedings; thus, a court has the authority, but is not obliged, to dismiss a habeas petition that raises issues that have already been decided).

**49.** *See Stone v. Powell,* 428 U.S. 465, 478 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976) ("[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."); *Sunal v. Large,* 332 U.S. 174, 182, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982 (1947) (absent extraordinary circumstances, the remedy of habeas corpus is not available to defendants "who accept the judgment of [the trial court] and do not appeal").

**50.** *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991).

**51.** *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

suing post-conviction relief litigation based on a claim that was decided in prior litigation, or that could have been raised on direct appeal or in a prior petition for post-conviction relief. But AS 12.72.020(a)(6) goes farther. The statute generally prohibits *any* second or subsequent petition for post-conviction relief, even when the defendant can show that they were unable to raise the claim earlier.

Indeed, when the legislature enacted AS 12.72.020, they expressly repealed former Criminal Rule 35.1(h)—the rule that already barred successive petitions for post-conviction relief unless the defendant could show good cause for failing to raise their claim earlier—and replaced it with a statute that absolutely bars successive petitions for post-conviction relief. From this change, one can infer that the legislature specifically intended to stop defendants from pursuing a second petition for post-conviction relief even when there concededly *is* a good reason why the defendant could not raise the claim in their first petition.

There is a real possibility that such a statute may lead to fundamental unfairness. For instance, scientists have recently developed the ability to conduct genetic tests of body samples—to collect and analyze what is commonly referred to as "DNA evidence". This genetic testing theoretically provides a way to identify one specific individual from among the population of the world. Because of this new forensic technique, several criminal convictions have been reversed (or the defendants pardoned) after the physical evidence in the case was re-examined and it became clear that the convicted defendant could not have been the culprit.[52]

When the Alaska legislature enacted a statute of limitations for post-conviction attacks on a criminal conviction (*see* AS 12.72.020(a)(3)), the legislature also enacted an exception for evidence that establishes the defendant's factual innocence. AS

**52.** A recent instance of this type of delayed justice was reported in the *Anchorage Daily News* of August 12, 2000, page A–5.

In 1983, a man named Larry Youngblood was arrested in Arizona for kidnapping and sexually abusing a young boy. The boy identified Youngblood from a photo lineup as the man who attacked him. Youngblood insisted that the boy had mistakenly identified him, but he was convicted.

On appeal, Youngblood claimed that he had been denied due process of law because the police had not thought to refrigerate the victim's underwear and t-shirt so that the semen stains on this clothing could be subjected to the types of serological testing available at that time. The Arizona Court of Appeals concluded that this negligent handling of the evidence constituted a denial of due process, and they reversed Youngblood's conviction. *See State v. Youngblood*, 153 Ariz. 50, 734 P.2d 592 (1986). But the State of Arizona pursued Youngblood's case to the United States Supreme Court, and the Supreme Court reinstated Youngblood's conviction. In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Supreme Court held that even when the police negligently fail to preserve evidence, there is no violation of due process. Rather, the Court decided, due process is violated only when the police act in bad faith—when they intentionally destroy or fail to preserve evidence that they believe may be exculpatory. *Id.*, 488 U.S. at 57–58, 109 S.Ct. at 337.

Recently, the physical evidence from Youngblood's case was re-examined using DNA testing. The DNA tests conclusively established that Youngblood was not the boy's attacker. A spokesman from the Tucson Police Department crime lab told the media that there was "no uncertainty" in the test results. After spending 17 years in prison for crimes he did not commit, Youngblood is now free.

Another similar case was reported two weeks later. The *Anchorage Daily News* of August 26, 2000, carried a photograph on page A–5 of a man who was smiling and holding a legal document in his hand. The caption read: "William Gregory exults as he leaves [the] Jefferson Circuit Court in Louisville [Kentucky] ... carrying a judge's order dismissing all charges against him. Gregory, who spent eight years in prison convicted of raping two women, became the first person in Kentucky to be exonerated based on DNA evidence."

And again, on the day that the draft of this opinion was submitted for final approval, the *Anchorage Daily News* reported that the governor of Virginia had granted a full pardon to Earl Washington, Jr., a mentally retarded man who spent a decade on death row for the 1982 rape and murder of a 19–year–old girl. Washington had confessed to the rape and murder; he later recanted his confession, but he was convicted and sentenced to death. Washington was exonerated after DNA testing showed that the semen taken from the victim's body did not match his DNA, and that semen taken from a blanket at the crime scene matched the DNA of another convicted rapist. See the *Anchorage Daily News* of October 3, 2000, page A–4, "DNA tests clear inmate in rape, murder".

12.72.020(b)(2) declares that the statute of limitations does not bar a defendant from filing a petition for post-conviction relief based on newly-discovered proof of the defendant's innocence, assuming the defendant acts diligently in presenting this evidence to the court.[53]

■ But the exception for newly-discovered evidence codified in 020(b)(2) does not apply to AS 12.72.020(a)(6), the ban on successive petitions for post-conviction relief. Thus, a defendant who obtained clear genetic evidence of their innocence would be barred from presenting this evidence to the courts if the defendant had already sought post-conviction relief on any other ground. In such circumstances, we believe that the Alaska Constitution's guarantee of due process of law would require the courts to hear the defendant's petition even though the statute seemingly prohibits it.

It is difficult to predict how often courts will be confronted with convincing proof of a defendant's factual innocence. Based on past experience, courts are more likely to see the kind of claim that Grinols raises here: the claim that he received ineffective assistance of counsel when he litigated his prior petition for post-conviction relief. We therefore turn to the question of whether, despite AS 12.72.020(a)(6), Grinols is entitled to litigate the effectiveness of the attorney who represented him in a prior petition for post-conviction relief.

### (c) Claims that the defendant received ineffective assistance of counsel in prior post-conviction relief litigation

This court has already recognized the potential injustice of applying a rule of *res judicata* in situations where, because of incompetent counsel, a defendant never had a fair opportunity to present their claims earlier. In *Bangs v. State* [54], we declared that a defendant would generally be able to establish good cause for failing to assert a claim in an earlier petition for post-conviction relief if "the failure to assert [the] claim in a prior application resulted from ineffective assistance of counsel."

Courts from other jurisdictions have reached the same conclusion. For instance, in *People v. Winsett*, the Supreme Court of Illinois stated that, even though "post-conviction review is limited to constitutional matters which ... could not have been ... previously adjudicated[,] ... [t]his court has held that [this] doctrine ... should not bar the court from considering an issue where the [defendant's failure to previously raise the issue] stems from incompetency of counsel on appeal." [55] Decisions from other states echo this approach.[56]

One potential objection to *Bangs* and the cases from our sibling states is that all of

53. AS 12.72.020(b)(2) states that "[n]otwithstanding (a)(3) ... of this section, a court may hear a claim based on newly discovered evidence if the applicant establishes due diligence in presenting the claim and [presents admissible] evidence [that] establishes by clear and convincing evidence that the applicant is innocent."

54. 911 P.2d 1067, 1068 (Alaska App.1996).

55. 153 Ill.2d 335, 180 Ill.Dec. 109, 606 N.E.2d 1186, 1193 (1993).

56. *See Collins v. State*, 588 N.W.2d 399, 402–03 (Iowa 1998) (the incompetence of prior post-conviction relief counsel may constitute a sufficient reason for the defendant's failure to raise a claim in the earlier petition); *Petition of Hans*, 288 Mont. 168, 958 P.2d 1175 (1998) (when the defendant's appellate counsel incompetently abandoned his appeal, the defendant should be allowed to pursue a petition for post-conviction relief and raise claims that would otherwise be barred because they could have been raised on appeal); *Washington v. State*, 324 S.C. 232, 478 S.E.2d 833, 835 (1996) (the rules barring successive petitions for post-conviction relief mus be relaxed when the defendant did not receive due process during the prior post-conviction litigation); *Hernandez v. State*, 133 Idaho 794, 992 P.2d 789, 793 (App.1999) (the incompetence of the lawyer who represented the defendant in a prior action for post-conviction relief is sufficient reason to allow the defendant to pursue a second petition for relief); *Gooch v. State*, 717 So.2d 50 (Ala.Crim.App.1997) (a defendant should normally be allowed to pursue a second petition for post-conviction relief based on the claim that his trial attorney was ineffective if this is the first petition filed by an attorney other than the trial attorney); and *State v. Pocius*, 104 Ohio App.3d 18, 660 N.E.2d 1236, 1238 (1995) (*res judicata* would not bar the defendant from claiming that his trial attorney was incompetent if this petition for post-conviction relief was the first litigation filed by an attorney other than the trial attorney).

these decisions are premised on the assumption that a defendant can expect competent counsel when they pursue a claim for post-conviction relief. This assumption is no longer self-evident. As explained in Section 4(c) of this opinion, the federal Constitution does not guarantee effective assistance of counsel to defendants in post-conviction relief litigation. More particularly, the United States Supreme Court has ruled (1) that there is no federal right to the assistance of counsel in post-conviction relief litigation, and (2) even when a state grants defendants the right to assistance of counsel in post-conviction relief litigation, this is a matter of state law only, and there is no violation of the federal Constitution if the defendant's lawyer turns out to be incompetent.

But although federal law does not guarantee a right to counsel in post-conviction relief litigation, Alaska law does—at least, for defendants who are pursuing their first petition for post-conviction relief.[57] And even though the United States Supreme Court has declared that the incompetence of the defendant's appointed attorney is of no concern, we agree with the Supreme Court of California that a defendant who is represented by counsel "has a right to assume that counsel is competent".[58] As former Chief Judge Bryner said in his concurring opinion in *Hertz v. State*[59], "Inasmuch as . . . representation by counsel is a matter of right, there is simply no basis for concluding that post-conviction relief applicants should receive anything less than the full, effective assistance of counsel".

Or, as the Supreme Court of Connecticut declared more pointedly, "it would be absurd [for a defendant] to have the right to appointed counsel who is not required to be competent." [60]

We conclude that, because Alaska law grants a defendant the right to counsel in post-conviction relief proceedings, defendants are entitled to expect that their attorneys will provide competent representation.[61] This means that a defendant may be entitled to relief if they can later prove that their post-conviction relief attorney's performance was not competent, and they must be allowed an opportunity to present this claim in a second petition for post-conviction relief.

We emphasize, however, that the ultimate question in post-conviction relief litigation is not whether the defendant's post-conviction relief attorney was incompetent. Rather, the question is whether the trial court proceedings that resulted in the defendant's conviction and sentence were fair and lawful.[62] The incompetence of post-conviction relief counsel is not, by itself, a ground for granting post-conviction relief.[63] The defendant must additionally show prejudice. In this context, "prejudice" means proof that there is, in fact, a good reason to reverse or modify the defendant's conviction or sentence, or to grant the defendant a new trial.[64]

We addressed a similar issue in *State v. Steffensen.*[65] In that post-conviction relief

---

57. *See* AS 18.85.100(c). *See also Donnelly v. State*, 516 P.2d 396 (Alaska 1973); *Nichols v. State*, 425 P.2d 247 (Alaska 1967). *But cf. Nichols*, 425 P.2d at 255 (expressly declining to decide the question of whether a defendant is entitled to counsel in a second or subsequent petition for post-conviction relief).

58. *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 748 (1993).

59. 755 P.2d 406, 410 (Alaska App.1988).

60. *Iovieno v. Commissioner of Correction*, 242 Conn. 689, 699 A.2d 1003, 1010 (1997) (quotation omitted).

61. *See Clark* and *Iovieno, supra. Accord, Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 302–03 (1999).

62. *See* AS 12.72.010(1)—(9). "The purpose of the post-conviction relief proceeding is to permit inquiry into the constitutional issues involved in the 'original' proceeding." *People v. Flores*, 153 Ill.2d 264, 180 Ill.Dec. 1, 606 N.E.2d 1078, 1084 (1992) (citation omitted).

63. *See In re People v. Szabo*, 186 Ill.2d 19, 237 Ill.Dec. 56, 708 N.E.2d 1096, 1100 (1998); *House v. State*, 911 S.W.2d 705, 712 (Tenn.1995); *Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 748–49 (1993).

64. *See Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 304 (1999); *Whitsel v. State*, 525 N.W.2d 860, 864–65 (Iowa 1994); *Clark*, 21 Cal. Rptr.2d 509, 855 P.2d at 749.

65. 902 P.2d 340 (Alaska App.1995).

litigation, the defendant asserted that his trial attorney had incompetently failed to recognize and argue a search and seizure issue. We held that, even if this was true, the defendant was not entitled to relief unless he proved that the proposed suppression motion was in fact meritorious, and that there was a reasonable possibility that suppression of the challenged evidence would have affected the outcome of the underlying criminal proceeding.[66]

▪ Similarly, when a defendant challenges the competence of the attorney who represented them in their first petition for post-conviction relief, the defendant must do more than prove that their post-conviction relief attorney failed to raise or competently argue a colorable legal issue. The defendant must also prove four more things:

▪ *First*, the defendant must establish their own diligence in raising the claim of ineffective representation. A defendant can not "sit on" a claim of ineffective assistance of counsel. The defendant must show "that the facts upon which [the defendant] relies were not known to [the defendant] and could not in the exercise of due diligence have been discovered by him ... substantially earlier than the time of his [second petition]."[67]

(We note, but do not resolve, the related question of whether AS 12.72.020(a)(3), the statute of limitations on post-conviction relief actions, continues to apply even when a defendant claims that their first post-conviction relief attorney was incompetent. Several courts have held that, even though attorney incompetence may provide good cause for allowing a defendant to raise an issue that would otherwise be *res judicata*, attorney incompetence does not excuse a defendant from complying with the filing deadline set by the statute of limitations.[68] In this case, the State has not argued that Grinols's petition is time-barred. We therefore do not address this issue further.)

▪ *Second*, the defendant must establish the incompetence of their prior post-conviction relief attorney. They must prove that their attorney's failure to recognize the omitted issue, or the attorney's failure to pursue it, constituted a level of representation below the acceptable minimum of skill expected of criminal law practitioners.[69]

▪ The law presumes that attorneys are competent, and a defendant must affirmatively rebut this presumption of competence.[70] It is the defendant's burden to negate the possibility that the attorney chose, for valid tactical reasons, not to raise the issue, or to argue it in a different way.[71] And if the omitted issue rests on facts within the defendant's knowledge, the defendant must show that they apprised the attorney of the operative facts. In particular, when a defendant asserts that their post-conviction relief attorney inexcusably failed to pursue arguments that the defendant's trial attorney was incompetent, this assertion will be defeated by evidence that the defendant was aware of the possible attacks on their trial attorney's performance when the first post-conviction relief action was litigated but failed to mention these potential claims to their post-conviction relief attorney.[72]

▪ *Third*, the defendant must establish that the omitted legal issue is, in fact, meritorious—that if the underlying issue had been litigated, the defendant would have won.

---

66. *See id.* at 343.

67. *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 744 (1993). *Accord, Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 916–17 (2000); *McCracken v. State*, 946 P.2d 672, 675 (Okla.Crim.App.1997); *Meredith v. State*, 638 N.E.2d 814, 815 (Ill.App.1994).

68. *See Johnson v. Ellingsworth*, 783 F.Supp. 215, 220 (D.Del.1992); *Pursell*, 749 A.2d at 916–17; *Dible v. State*, 557 N.W.2d 881, 883 (Iowa 1996); *Whitsel v. State*, 525 N.W.2d 860, 864–64 (Iowa 1994).

69. *See Risher v. State*, 523 P.2d 421, 424 (Alaska 1974); *State v. Jones*, 759 P.2d 558, 567 (Alaska App.1988).

70. *Jones*, 759 P.2d at 569, citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

71. *See Jones*, 759 P.2d at 569–570.

72. *See Pizzuto v. State*, 127 Idaho 469, 903 P.2d 58, 61 (1995); *Wilkins v. State*, 522 N.W.2d 822, 824 (Iowa 1994).

When a defendant presents a "layered" claim of ineffective assistance of counsel (*i.e.*, when the defendant claims that their post-conviction relief attorney incompetently failed to prove the incompetence of their trial attorney), this means that the defendant must prove the incompetence of both attorneys.

By establishing the incompetence of the post-conviction relief attorney, the defendant proves that they are entitled to raise claims against the trial attorney that would normally be barred by the doctrine of *res judicata.* But this alone does not win the day for the defendant. The ultimate issue is the fairness of the original trial court proceedings. In the context of a "layered" claim of ineffective assistance, this means that the defendant must also prove that their trial attorney was incompetent.[73]

*Fourth* and finally, the defendant must establish that, with this issue resolved in the defendant's favor, there is a reasonable possibility that the outcome of the defendant's original trial court proceedings would have been different. Again, the ultimate issue is the fairness of the defendant's conviction and sentence. It is not enough for the defendant to prove that the first post-conviction relief proceeding should have gone differently. The defendant must also prove that the flaw in the prior post-conviction relief proceeding prevented the defendant from establishing a demonstrable and prejudicial flaw in the original trial court proceedings.

As this court emphasized in *State v. Jones*, "a mere conclusory or speculative allegation of harm will not suffice" to establish prejudice:

> The accused must do more than present "abstractions without context." Once the performance prong of the *Risher* standard has been established, the accused must, in addition, make a specific factual showing that counsel's incompetence had some actual, adverse impact on the case—that is, the accused must prove some effect of

[the] challenged conduct on the reliability of the trial process[.]

759 P.2d at 573 (citations omitted).

■ These, then, are the elements that a defendant must prove when litigating a second petition for post-conviction relief based on allegations that the defendant received ineffective assistance of counsel during their first post-conviction relief action. A defendant's petition will be insufficient unless it is supported by the affidavits and other documentation specified in Criminal Rule 35.1(d) and in *State v. Jones.*[74] Even when the required documentation accompanies the petition, the defendant's evidence must affirmatively rebut the presumption that their prior post-conviction relief attorney was competent—and, in layered claims of ineffective assistance, the further presumption that their trial attorney was competent.

■ We have concluded that the due process clause of the Alaska Constitution requires a limited exception to the ban on successive petitions for post-conviction relief codified in AS 12.72.020(a)(6). Defendants must be allowed to show that, despite their earlier petition for post-conviction relief, they were deprived of a fair opportunity to litigate their claims because they did not receive competent legal representation during the litigation of their first petition.

At the same time, we recognize the ease with which defendants may seek to evade the restrictions on successive post-conviction relief litigation "simply by couching [their] claims in [terms] of ineffective assistance".[75] We emphasize that defendants can not obtain a second petition for post-conviction relief "simply by rephrasing previously addressed issues in constitutional terms".[76] A defendant must prove that, because of the incompetence of their post-conviction relief counsel, they were denied a fair and meaningful opportunity to litigate their claims. The defendant must also prove that their collateral

73. A similar analysis applies when the defendant claims that their first post-conviction relief attorney incompetently failed to demonstrate the incompetence of the lawyer who handled the defendant's direct appeal.

74. *See Jones*, 759 P.2d at 566–67, 570, 573–74.

75. *People v. Flores*, 153 Ill.2d 264, 180 Ill.Dec. 1, 606 N.E.2d 1078, 1084 (1993).

76. *Id.* (quotations omitted).

attack on their underlying conviction would have succeeded if those claims had been properly litigated.

In the present case, Grinols claims that his post-conviction relief attorney was ineffective, but his petition does not address or present a *prima facie* case on all of the elements outlined in this section of our opinion. Because we have now clarified the law in this area, Grinols should be given a chance to amend or supplement his petition to present a *prima facie* case on all of these elements.[77]

### 6. Grinols's right to counsel in a second petition for post-conviction relief

Grinols's appeal presents one more issue: is a defendant entitled to the assistance of counsel when litigating a successive petition for post-conviction relief? The answer given by the Alaska statutes is clearly "no": a defendant's right to counsel extends only to a first petition for post-conviction relief. According to AS 18.85.100(c)(1), "[a]n indigent person is not entitled to [legal] representation [at public expense] for purposes of bringing an untimely or successive application for post-conviction relief".

This statute is clearly constitutional under the federal Constitution; as discussed earlier in this opinion, the United States Supreme Court has ruled that the federal Constitution does not guarantee the assistance of counsel in post-conviction relief litigation. Thus, the only remaining question is whether the Alaska Constitution calls for a different result.

More than thirty years ago, in *Nichols v. State*[78], the Alaska Supreme Court ruled that a defendant who seeks post-conviction relief is entitled to the assistance of counsel, at least in the litigation of a first petition. The court expressly declined to decide the

issue presented in Grinols's case: whether a petitioner is entitled to the assistance of counsel in a second petition.[79]

Moreover, the supreme court was unable to agree on the legal basis of the petitioner's right to counsel when litigating a *first* petition. Justice Dimond (the author of the lead opinion) concluded that an indigent petitioner's right to counsel arose from the equal protection clause of the Alaska Constitution (Article I, Section I) because, "[if] an indigent is forced to handle his own [post-conviction relief] motion, the [ensuing] hearing ... does not comport with fair procedure."[80] Justice Rabinowitz, the other member of the majority[81], rejected this equal protection analysis. He agreed that "[f]ailure to appoint counsel [for an indigent petitioner] results in fundamental unfairness"[82], but he believed that the supreme court should use its supervisory powers to create a right to counsel, rather than basing its ruling on constitutional grounds.[83] (In the alternative, Justice Rabinowitz suggested that the assistance of counsel might be required by the due process clause of the Alaska Constitution.)[84]

The third member of the court, Chief Justice Nesbett, dissented. He predicted (correctly) that the United States Supreme Court would draw a distinction between providing counsel on direct appeal and supplying counsel to an indigent petitioner seeking to mount a collateral attack on their conviction.[85] He concluded that an indigent petitioner had no right to counsel, although the superior court had the authority to appoint one if "necessary to adequately protect the petitioner's rights".[86]

Neither the supreme court nor this court has returned to this issue in the ensuing 33

---

77. See *Steffensen v. State*, 837 P.2d 1123, 1128 (Alaska App.1992); *State v. Jones*, 759 P.2d at 575.

78. 425 P.2d 247 (Alaska 1967).

79. See *id.* at 255.

80. See *id.* at 254.

81. In 1967, when *Nichols* was decided, the supreme court had only three members.

82. *Id.* at 256.

83. See *id.*

84. See *id.*

85. See *id.* at 254–55.

86. *Id.* at 258; *see also id.* at 257.

years. In *Donnelly v. State* [87], the supreme court expanded its holding in *Nichols*, declaring that defendants were entitled to the assistance of counsel, not just in litigating petitions that survived summary dismissal, but also during the initial preparation and investigation of a post-conviction relief case. However, the issues in *Donnelly* did not require the court to re-examine or clarify the precise legal basis of the defendant's right to counsel.

But this question has substantial importance in Grinols's case. If, as Justice Dimond suggested, the equal protection clause of the Alaska Constitution guarantees the assistance of counsel in a first petition for post-conviction relief, then there is at least some ground for arguing that a defendant should have a similar right to counsel when litigating a subsequent petition, at least when the defendant asserts that they were denied competent counsel during litigation of the first petition. But if, as Justice Rabinowitz suggested, the right to counsel recognized in *Nichols* and *Donnelly* was based on the supervisory power of the supreme court, then that right plainly does not exist with respect to a second petition for post-conviction relief—because the legislature has stated that the right to counsel applies only to a defendant's first petition, and because the supreme court's supervisory power "must be exercised in a manner that does not conflict with constitutional or statutory law. When the legislature has acted[,] the courts may not exercise their common-law power in a manner inconsistent with the legislature's determination." [88] Because AS 18.85.100(c)(1) limits the right to counsel to a first petition for post-conviction relief, it is no longer possible to argue that the supreme court, using its supervisory authority, has established a right to counsel for defendants pursuing second and successive petitions for post-conviction relief.

Turning, then, to the equal protection analysis relied on by Justice Dimond in *Nichols*, we find that the law has changed considerably since 1967, the year *Nichols* was decided. As explained in Section 4(b) of this opinion, the United States Supreme Court has rejected the notion that post-conviction relief petitioners have a constitutionally guaranteed right to counsel—even to pursue a *first* petition. We note, moreover, that even Justice Dimond expressly declined to reach the question of whether his equal protection analysis would guarantee counsel in a situation like Grinols's, where a defendant is pursuing a second petition for post-conviction relief.

 The guarantee of equal protection of the law requires that access to the courts be "free of unreasoned distinctions, and that indigents have an adequate opportunity to present their claims fairly within the adversary system." [89] But the government does not have to establish absolute equality between indigent defendants and their wealthier counterparts. The equal protection clause does not require the government to take steps to erase any advantage that money might provide to a litigant. In the end, "[t]he question is not one of absolutes, but one of degrees." [90] As the United States Supreme Court said in *Douglas v. California*, "Absolute equality is not required; lines can be . . . drawn[,] and we often sustain them." [91]

For example, in *State v. Jones*, this court recognized that the guarantee of effective assistance of counsel does not mean that an indigent defendant can demand that their court-appointed attorney engage in the same exhaustive investigation and extensive expenditures that a wealthy defendant might ask of their attorney:

> [G]iven an unrestricted budget and freed of any constraints as to probable materiality or accountability, a lawyer might . . .

87. 516 P.2d 396 (Alaska 1973).

88. *Hosier v. State*, 957 P.2d 1360, 1363 (Alaska App. 1998).

89. *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444–45, 41 L.Ed.2d 341 (1974) (quotation omitted).

90. *Moffitt*, 417 U.S. at 612, 94 S.Ct. at 2445.

91. 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811, 814 (1963).

cheerfully log[ ] in many hours looking for the legal equivalent of a needle in a haystack. ... [A] millionaire might ... retain[ ] counsel to leave not a single stone unturned. However, a defendant is not entitled to perfection[,] but to basic fairness. In the real world, expenditure of time and effort is dependent on a reasonable indication of materiality.

*Jones,* 759 P.2d at 572.[92]

We believe that this same principle governs Grinols's case. Alaska law grants indigents the right to an attorney at public expense to defend themselves at trial. If that trial results in conviction, indigent defendants are entitled to counsel at public expense to pursue an appeal and, if the appellate effort proves unsuccessful, to pursue a petition for post-conviction relief. The question in Grinols's case is whether the equal protection clause of the Alaska Constitution requires more.

█ We conclude that after all of this litigation—after a judge or jury has returned a verdict of guilty, after an appellate court has reviewed and affirmed the fairness of the trial on direct appeal, after the trial court has reviewed and rejected any post-conviction relief claims, and after an appellate court has reviewed the post-conviction relief proceedings—the government need not provide an attorney to all indigent defendants seeking to pursue a second petition for post-conviction relief. Such defendants have already obtained repeated judicial review of the proceedings that resulted in their criminal convictions. The equal protection clause does not require society to finance yet another assault on the determination of guilt.

That being said, we nevertheless conclude that trial courts have the authority to appoint counsel for indigent defendants in particular cases. We agree with what Chief Justice Nesbett said in his dissenting opinion in *Nichols:* Although the equal protection clause of the Alaska Constitution does not grant "an invariable right to be provided

with counsel at state expense"[93], the due process clause of our state constitution gives courts the authority to appoint counsel when "the circumstances of a defendant or the difficulties in presenting a particular matter are such that fair and meaningful hearing cannot be had without the aid of counsel."[94]

With regard to Grinols's case, if Grinols amends his petition to meet the requirements specified in Section 5(c) of this opinion, and if the amended petition presents some good reason to believe that Grinols did not receive competent legal representation when he litigated his first petition for post-conviction relief, then the superior court should consider whether to appoint counsel to represent him.

Counsel will not be required absent a demonstrable need. As Justice Nesbett noted, "The possibilities for alleging legal and factual issues requiring determination [in post-conviction relief proceedings] are infinite."[95] Many of these claims may be fairly decided based on the pleadings or based on the outcome of a relatively uncomplicated evidentiary hearing. But when litigation of the defendant's claim would be unfair unless the defendant is assisted by counsel, the Alaska Constitution's guarantee of due process of law mandates that a court have the authority to appoint counsel for an indigent defendant.

### Conclusion

We uphold the constitutionality of Civil Rule 86(m), the rule which states that post-conviction relief supersedes habeas corpus as the procedural method for collaterally attacking a criminal conviction.

With the limited exceptions explained in Sections 5(b)-(c) of this opinion, we uphold the constitutionality of AS 12.72.020(a)(6), the statute which bars a defendant from pursuing successive petitions for post-conviction relief.

█ Finally, we conclude that indigent defendants have no constitutional right to counsel at public expense when they litigate

---

**92.** Quoting *United States v. Decoster,* 624 F.2d 196, 211 (D.C.Cir.1976) *(en banc ).*

**93.** *Nichols,* 425 P.2d at 256.

**94.** *Id.* at 257.

**95.** *Id.* at 258.

a second petition for post-conviction relief. We nevertheless hold that the superior court has the authority, under the due process clause of the Alaska Constitution, to appoint counsel for a defendant if the court concludes that a lawyer's assistance is needed for a fair and meaningful litigation of the defendant's claim.

Most of Grinols's claims are barred by the doctrine of *res judicata*, and these claims are therefore barred under section 020(a)(6). With respect to those claims, the judgement of the superior court is AFFIRMED.

As described in Section 2(c) of this opinion, Grinols has raised two claims that are not barred by AS 12.72: his claim that a newly-imposed condition of probation is illegal, and his claim that the Department of Corrections has miscalculated his release date. Grinols is entitled to pursue the first claim by filing a motion in his underlying criminal case. He is entitled to pursue the second claim in his current petition for post-conviction relief, because AS 12.72.020(c) makes an express exception for this kind of claim. With respect to those two claims, the judgement of the superior court is REVERSED.

Finally, the due process clause of the Alaska Constitution requires that Grinols be allowed to seek post-conviction relief a second time based on the claim that he received ineffective assistance of counsel when he litigated his first petition. With regard to this ineffective assistance claim, the superior court should allow Grinols the opportunity to amend his petition and set forth a *prima facie* case, now that we have clarified the elements that Grinols is required to prove. With respect to this claim, the judgement of the superior court is VACATED.

Once Grinols has filed an amended petition (or has supplemented his current petition), the State may move for summary dismissal of this claim if Grinols fails to set forth a *prima facie* case.

Either on its own motion or the motion of either party, the superior court may consider whether to appoint counsel to represent Grinols in this litigation.